HUFFMAN v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 28, 1919.)

No. 5165.

1. INDICTMENT AND INFORMATION ⬿110(51)—SUFFICIENCY—STATUTORY LANGUAGE—WHITE SLAVE TRAFFIC ACT.
   An indictment for violation of White Slave Traffic Act, § 2 (Comp. St. § 8813), *held* good, where it charged the offense in the language of the statute.

2. CRIMINAL LAW ⬿1044—REVIEW BY APPELLATE COURT—ERRORS WAIVED IN LOWER COURT.
   Ruling on a motion by defendant for direction of a verdict, made at the close of the government's case, cannot be assigned for error, unless the motion is renewed at the close of all the evidence.

3. PROSTITUTION ⬿4—INTERSTATE COMMERCE—WHITE SLAVE TRAFFIC ACT—EVIDENCE.
   Evidence *held* to sustain a conviction for violation of the White Slave Traffic Act (Comp. St. §§ 8812–8819), by causing a girl to be transported in interstate commerce for immoral purposes.

4. CRIMINAL LAW ⬿878(3)—TRIAL—VERDICT.
   Since the commission of an offense in different ways may be charged in separate counts of an indictment, to meet the proof, an acquittal on one count does not invalidate a conviction on another.

   Sanborn, Circuit Judge, dissenting.

---

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Criminal prosecution by the United States against Charles W. Huffman. Judgment of conviction, and defendant brings error. Affirmed.

Charles A. Irwin, of Denver, Colo., for plaintiff in error.

Harry B. Tedrow, U. 'S. Atty., of Boulder, Colo., and Otto Bock, Asst. U. S. Atty., of Denver, Colo.

Before SANBORN and STONE, Circuit Judges, and ELLIOTT, District Judge.

ELLIOTT, District Judge. The plaintiff in error was charged with a violation of the act of Congress of June 25, 1910, known as the Mann Act (36 Stat. 825, c. 395 [Comp. St. §§ 8812–8819]), in an indictment containing four counts. Upon a plea of "not guilty" and a trial, a verdict of "guilty" was returned upon the first count of the indictment, and "not guilty" upon the remaining three counts. Motions for a new trial and in arrest of judgment were denied, and the defendant duly sentenced.

[1] Notwithstanding no demurrer was filed and no objection in any manner made to the form of the indictment, the first objection that is now urged by plaintiff in error is the insufficiency of the indictment, in that—

"The indictment does not allege that Gladys Overlander was transported in interstate commerce."

He predicates this contention in his brief upon the statement that—

"Count first of the indictment, in the case at bar, is based upon the second clause of the second section of the Mann Act."

This is clearly an erroneous assumption. Count 1 of the indictment is based on the first clause of section 2 of the act of June 25, 1910. This first clause of said section of said act, in so far as it is material to said first count, is as follows:

"Any person who shall knowingly * * * cause to be transported * * * in interstate * * * commerce * * * any woman or girl * * * with the intent and purpose to induce, entice, or compel such woman * * * to engage in any other immoral practice, * * *" shall be deemed guilty, etc.

This count in the indictment follows the language of the statute, fixes the date of the offense as April 11, 1917, the place as the city of East Palestine, in the county of Columbiana, in the state of Ohio, and in the language of the statute alleges that he—

"did * * * cause a certain girl, namely, Gladys M. Overlander, to be transported in interstate commerce from said city of East Palestine, in the state of Ohio, to the city and county of Denver, in the state and district of Colorado."

The second clause of said section 2 of said act specifically refers to procuring or obtaining tickets to be used by any woman or girl in interstate commerce, etc., and to that clause is added the words,

"whereby any such woman or girl shall be transported in interstate or foreign commerce," etc. Clearly it is not the intent and purpose to justify a conviction of an offense under the second clause of the second section of the act by simply showing the procuring of the tickets or other transportation, or the furnishing of the money to buy the same, to be used by any woman or girl in interstate commerce; but it must further appear, under that clause, that the woman, for whom such tickets or transportation was furnished, was actually transported in interstate or foreign commerce, under such ticket, and for the purposes named in the act. We think the phrase, "whereby any such woman or girl shall be transported in interstate commerce," as used in the second clause of said section 2 of the act, in no wise modifies or is intended to be a part of the description of the offenses named in the first clause of said section 2.

This offense is statutory, and we must look to the language of the statute for the ingredients of the offense. The said first count of the indictment in the case at bar charges the offense in the language of the statute, and is therefore sufficient. U. S. v. Gooding, 12 Wheat. 460, 6 L. Ed. 693; Potter v. U. S., 155 U. S. 438, 15 Sup. Ct. 144, 39 L. Ed. 214; Burton v. U. S., 202 U. S. 344, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392.

We think the count in question contained every element of the offense intended to be charged; that it was sufficient to notify the defendant of what he was charged with, and therefore what he must be prepared to meet; and upon its face accurately revealed to what extent an acquittal or conviction upon that count of the indictment might be pleaded, in the event of other proceedings for the same or a similar offense. Cochran v. U. S., 157 U. S. 286, 15 Sup. Ct. 628, 39 L. Ed. 704.

[2] The second contention of the plaintiff in error is that the evidence was not sufficient to justify the verdict. The record discloses that at the close of the government's case the defendant moved for a directed verdict of "not guilty," on the ground that the evidence failed to support the allegations of said first count, but this motion was overruled.

This motion was not renewed at the close of the defendant's case, and there was therefore no ruling of the trial court upon which such an assignment could be based. Defendant's failure to renew his motion at the close of all of the evidence waived this question, and there was no exception to the charge of the court. There is therefore really nothing to be considered, except the last contention of the plaintiff in error.

[3] However, as both parties argued the question, it is within the sound discretion of this court to notice the claim of counsel for plaintiff in error that there was no evidence to sustain the verdict of "guilty," although the question was not raised in the trial court. Doe v. U. S., 253 Fed. 903, —— C. C. A. ——, and cases there cited.

Plaintiff in error seems to place some emphasis upon the language of the indictment, that the defendant "did * * * cause a cer-

tain girl, namely, Gladys M. Overlander, to be transported," etc., and to attribute to the word "cause" a meaning out of the ordinary.

For the purpose of a construction of this statute, it would seem that Webster's definition, "to cause a thing is to effect it as an agent; to bring it about"—is sufficient, and therefore, in the determination of the sufficiency of the evidence to sustain the verdict, the question becomes one of whether or not under all the testimony, with the reasonable inferences that the jury might logically and reasonably draw therefrom, there was sufficient to sustain this allegation of the indictment that the defendant "caused" the transportation of this girl in interstate commerce from the point named to Denver, Colo., for the purpose therein set forth.

The testimony reveals that the defendant, about 40 years of age, was the pastor of a church at East Palestine, Ohio, the home of Gladys Overlander, about 18 years of age and a member of his church; that he had been her pastor, as well as that of her family, for 2½ years prior to the date named in the indictment; that the defendant was a married man; that the defendant went to the home of Gladys in the absence of her parents at various times, and sustained illicit relations with her, usually on Wednesday nights, when her mother attended the Ladies' Aid; that the defendant discussed with Gladys the matter of leaving East Palestine for the West a half dozen times, the defendant commencing such conversations; that defendant resigned his pastorate on Easter Sunday, April 8, 1917, and on the following Tuesday he met Gladys and told her he was going to take his wife to Akron that evening, that he would then go to Pittsburgh the next day, and that she should follow him on the next train, and should meet him at the Union Depot at Pittsburgh, and from there they would go on West as far as his money would carry them. She testifies that at the time of that conversation he further stated that, if she did not follow him, he would come back the next day for her; that in these conversations the defendant had stated to her that they would live as man and wife in the West. Gladys stated that she was afraid that, if she did not go with him, the defendant would compel her to go, and that he made a threat that she must go with him. She did leave East Palestine on the next day on the next train for Pittsburgh, and there met the defendant at the Union Depot, in accordance with the arrangement that she says he made with her the day before. They left Pittsburgh together at 6 p. m. on the same day, for Columbus, Ohio, via the Panhandle Railroad, defendant paying for the transportation, arriving at Columbus at midnight, and the defendant registering them at the Majestic Hotel as man and wife under an assumed name. The next morning they left Columbus for St. Louis, Mo., via railroad, defendant paying for the transportation, and they arrived at St. Louis the same day. Defendant registered them at the Majestic Hotel under an assumed name, as man and wife, and they stayed there that night and the following day, which was Sunday, and until Monday morning. Sunday afternoon they obtained a map, traced the lines to the West, and the defendant thereupon informed Gladys, "I guess we will go to Denver." It was testified that that was as far

as the money would carry them. On Monday morning they left for Denver, via railway, defendant paying for the transportation, arriving at Denver, Colo., on Wednesday, and he registered them at the Oxford Hotel as man and wife under an assumed name. It is undisputed, and shown by the testimony of witnesses other than Gladys and the defendant, that thereafter they engaged in the practice of illicit relations, renting rooms and living there together as man and wife. The defendant admitted to the chief of police of Denver that he paid for the transportation for Gladys to Denver, and shortly after reaching Denver wrote a letter to the parents of Gladys, in which he stated that the girl was innocent, etc.

We think this evidence, with the inferences that necessarily must reasonably be drawn therefrom, amply sustains the verdict of guilty as charged in the first count of this indictment. It was for the jury to consider and determine the sufficiency of the evidence. This testimony, both the direct and circumstantial, with the reasonable inferences to be drawn therefrom, justified the jury in finding that the intent and purpose of the defendant, prior to leaving East Palestine, was to engage in the practice of illicit sexual intercourse with Gladys Overlander after transporting her in interstate commerce to Denver, as alleged.

The contention is made that the evidence does not definitely fix the place of their destination at Denver, Colo. It is true that the first time that Denver, Colo., was mentioned by the defendant was while they were en route, and at St. Louis; but the evidence does conclusively show the intent and purpose to take her as far West as the money would carry them, and that they should live as man and wife where-ever they went, and that this transportation of this girl was to be by interstate commerce and for that prohibited purpose. It is admitted that Denver was as far as the money would carry them, and that he carried out the intent and purpose with which it is alleged he caused her transportation. His intent and purpose was necessarily judged by the jury from his acts, declarations, and conduct, what he said prior to leaving East Palestine, statements made en route and after he arrived at Denver, Colo., taking into account his actions, his conduct, before starting, en route, and at the latter city. His acts and declarations at Denver might be relevant to throw light upon his state of mind and his will, while he was furnishing the transportation and persuading the girl to take the interstate journey in question. We are of the opinion that there was substantial evidence to sustain the conviction under the first count of the indictment.

[4] The third and last contention of the plaintiff in error is that the verdict and judgment of not guilty on the second count of the indictment is an adjudication that the defendant was not guilty upon the first count thereof, and that the verdicts of not guilty on the third and fourth counts of the indictment are inconsistent with the verdict of guilty on the first count, and that the judgments of acquittal upon the third and fourth counts require a judgment of acquittal upon the first.

The second count is identical with the first, except the change in the date (two days later) and the allegation that the defendant on that date, at the city of St. Louis, in the state of Missouri, caused the transportation, etc., to the city and county of Denver.

The third count is under the second clause of section 2 of the act, and charges that the defendant persuaded, induced, and enticed the same girl to go in interstate commerce from East Palestine, Ohio, to Denver, Colo., and caused her to go and to be transported in interstate commerce, as a passenger, from East Palestine to Denver, for the purposes named in the first count.

The fourth count is the same as the third, and is drawn under the second clause of said section 2 of said act, differing from the third, in that it alleges that the defendant did persuade, induce, entice, and coerce the same girl to go in interstate commerce from St. Louis, Mo., to Denver, Colo., as a passenger in interstate commerce, for the purposes named in the preceding count.

These objections may be considered together. It will be noted from the above brief statement that the four counts in the indictment are for the same transaction; but the allegations of each count are stated within a distinct, separate provision of the same statute, and each is entirely independent of the others. This is good pleading, and is permissible by express statute of the United States. R. S. § 1024; section 1690, U. S. Comp. Stat. 1916.

The purpose of pleading the same transaction in several counts as to the manner or means of its commission is to avoid at the trial an acquittal by reason of any unforeseen lack of harmony between the allegations and the proofs. In Dealy v. U. S., 152 U. S. 542, 14 Sup. Ct. 681, 38 L. Ed. 545, the Supreme Court of the United States said:

"The discharge of the jury under the circumstances was doubtless equivalent to a verdict of not guilty as to that count. Upon this, defendant's counsel say that the only offense charged is conspiracy, that 'the indictment amounts to but one count, and one charge of conspiracy, with 17 different overt acts,' and that an acquittal on one count acquits him of the single offense charged in all the counts. But this is obviously a mistake. It is familiar law that separate counts are united in one indictment, either because entirely separate and distinct offenses are intended to be charged, or because the pleader, having in mind but a single offense, varies the statement in the several counts as to the manner or means of its commission, in order to avoid at the trial an acquittal by reason of any unforeseen lack of harmony between the allegations and the proofs"—citing 1 Bishop on Criminal Procedure, § 422.

Continuing, the court said:

"Yet, whatever the purpose may be, each count is in form a distinct charge of a separate offense, and hence the verdict of guilty or not guilty as to it is not responsive to the charge in any other count."

In Corbin v. U. S., 205 Fed. 278, 125 C. C. A. 114, the defendant, a postmaster, was charged with a violation of section 225 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1133 [Comp. St. § 10395]), in that he unlawfully, etc., converted to his own use and embezzled a specific sum of money belonging to the United States, which "came

into his hands and under his control in the execution and by virtue of his said office as postmaster." In the second count the accused was charged with embezzling the same amount of money, which he had in his official possession or control, by failing to remit or deposit it as required by law. The trial court, at the time of submitting the case to the jury, withdrew the latter charge from their consideration and directed an acquittal upon that count of the indictment. The defendant was convicted upon the first count of the indictment, and it was then contended that the verdict of guilty on the first count and not guilty on the second count was inconsistent and repugnant, and therefore, void. This court stated:

"If we could assume that the money described in the two counts was the same, which we cannot do, because the evidence is not before us, a common instance of charging in separate counts different ways of committing the same offense would be presented. * * * In such a case the withdrawal of one count, by directing a verdict at the final submission of the case, does not affect the other. Here there was a single verdict covering both counts, not a prior acquittal of the same offense, and the rights of the accused were not prejudiced."

This principle, as applied there, is entirely consistent with the situation presented in the case at bar, and applies with equal force. That a number of charges of violations of a United States statute may be joined in one indictment, the several charges being based on acts connected with the other and for transactions of the same class of crime, see opinion of this court in Kreuzer v. U. S., 254 Fed. 34, —— C. C. A. ——.

In a recent case, this court was called upon to consider the effect of acquittal upon some of the counts of an indictment, and conviction upon the remaining count. Boone v. U. S., 257 Fed. 963, —— C. C. A. —— (March 8, 1919). In that case violations of section 5209 of the Revised Statutes of the United States (Comp. St. § 9772) were alleged. Upon trial the jury returned a verdict of not guilty on the first eight counts, and of guilty on the ninth count. Judge Trieber, in the majority opinion, used the following language:

"It is true, as claimed by counsel, that the evidence as to some of the other counts, especially the sixth and eighth, on which the defendant was acquitted, is stronger against the defendant than that on this count; but it was for the jury to determine on what counts, if any, the defendant should be found guilty, and he certainly cannot complain of not having been found guilty on these counts. It is a well-known fact that juries frequently hesitate to return verdicts of guilty on a large number of counts, when the punishment which may be imposed on each count is as severe as that provided for violations of this statute (the minimum punishment on each count is five years); they therefore satisfy their consciences by a verdict of guilty on one or two counts, and not always on the counts supported by the strongest evidence."

This expression of this court, we think, is an acknowledgment of the procedure plainly stated by the Supreme Court of the United States in Dealy v. U. S., supra, permitting separate counts to be united in one indictment, either because entirely separate and distinct offenses are intended to be charged, or because the pleader, having in mind but a single offense, varies the statement in the several counts as to the manner or means of its commission, in order to avoid, at the trial, an

acquittal by reason of any unforeseen lack of harmony between the allegations and the proofs.

We find no prejudicial error in the trial of this case, and the judgment is therefore affirmed.

SANBORN, Circuit Judge (dissenting). The first and third counts of the indictment in this case seem to me to charge the same offense in words which have the same meaning and legal effect, and the jury by its finding that the defendant was guilty of the offense charged in the first count, and was *not guilty of the offense charged in the third count*, appears to me to have found that at the same time and place he was both guilty and not guilty of the same identical offense. The material parts of these counts are these:

The first count charges:

That Huffman, on April 11, 1917, "at the city of East Palestine, in the county of Columbiana, in the state of Ohio, did knowingly, willfully, unlawfully, and feloniously cause a certain girl, namely, * * * to be transported in interstate commerce from said city of East Palestine, in the state of Ohio, to the city and county of Denver, in the state and district of Colorado, and within the jurisdiction of this court, as a passenger upon the lines of certain common carriers engaged in interstate commerce (the names of which common carriers are to the grand jurors unknown), with the intent and purpose on the part of him, said. Charles W. Huffman, alias Wilbur Huff, to induce, entice and compel her * * * to engage in ·an immoral practice * * * with him, said Charles W. Huffman, alias Wilbur Huff, at said city and county of Denver."

The third count charges:

That Huffman, on April 11, 1917, "at the city of East Palestine, in the county of Columbiana, in the state of Ohio, did knowingly, willfully, unlawfully, and feloniously *persuade, induce, and entice* a certain girl, namely, [the same girl named in the first count,] *to go* in interstate commerce from said city of East Palestine, in the state of Ohio, to the city and county of Denver, in the state and district of Colorado, and within the jurisdiction of this court, as a passenger upon the lines of certain common carriers engaged in interstate commerce (the names of which said common carriers are to the grand jurors unknown), with the intent and purpose on the part of him, said Charles W. Huffman, alias Wilbur Huff, to persuade, induce, entice, and coerce her * * * to engage in an immoral practice * * * with him, said Charles W. Huffman, alias Wilbur Huff, *and that said Charles W. Huffman, alias Wilbur Huff, then and there and by means of such persuading, inducing, enticing, and coercing* did knowingly cause said girl *to go and be carried and* transported from said city of East Palestine, in the state of Ohio, to said city and county of Denver, in the state of Colorado, as a passenger in interstate commerce upon the lines of certain common carriers engaged in interstate commerce (the names of which said common carriers are to the grand jurors unknown)."

All the words and terms used in the first count of this indictment are· found in the second count; many of them are .found there twice. These· words charged that Huffman willfully caused the girl to be transported in interstate commerce from East Palestine to Denver, with the intent to induce her to engage in an immoral act with him at that place. Exactly the same charge is made in the third count of the indictment. All the words and terms used in this third count that were not used in the. first count .are italicized above, in order that

the identity of the offense charged in the two counts may be more readily perceived. The only words in the third count not found in the first are the words "persuade, induce, and entice," where, in place of these words, the word "cause" is used in the first count; the words "and that said Charles W. Huffman, alias said Wilbur Huff, then and there, by means of such persuading, inducing, enticing, and coercing," and the words "to go and be carried and" in the sentence which charges that by means of such persuasion and coercion Huffman caused the girl to go, be carried, and transported from East Palestine to Denver.

So it is that the first count charges that Huffman caused the girl to be transported from East Palestine to Denver for the unlawful purpose. Under that count, evidence that he caused her to go and to be transported by his persuasion, inducement, enticement, and coercion was legally competent; there was no evidence in the case that he caused her to go or to be transported in any other way; the jury, by its verdict on the third count, found that Huffman did not cause the girl to go or to be transported by his persuasion, inducement, enticement or coercion. And as there is no evidence that he caused her to go or to be transported by any other means, as the legal presumption is that the accused is innocent until he is found guilty, as a finding by a jury of guilt and innocence of the same offense at the same time certainly cannot overcome the legal presumption of innocence, and as in my opinion the jury in this case has found the defendant innocent, as well as guilty, of the same offense charged in each of these two counts, I cannot bring myself to concur in the affirmance of a judgment against him for an offense for which the jury seems to me to have utterly failed legally to condemn him.