**HUNTER v. UNITED STATES.**

No. 3075.

Circuit Court of Appeals, Fourth Circuit.

Nov. 17, 1930.

A. J. Lubliner and John Kee, both of Bluefield, W. Va., for appellant.

James Damron, U. S. Atty., of Huntington, W. Va. (Philip Angel, Asst. U. S. Atty., of Huntington, W. Va., on the brief), for the United States.

Before NORTHCOTT, Circuit Judge, and GRONER and SOPER, District Judges.

GRONER, District Judge.

Harold Edward Hunter, whom we shall speak of as defendant, was indicted for violation of the Act of June 25, 1910 (Mann Act, § 2) 36 Stat. 825, 18 USCA § 398, convicted, and sentenced to confinement in the penitentiary. At the time of the trial, defendant was about twenty-four years of age. In 1925, when he was nineteen years old, he went from Asheville, N. C., to Princeton, W. Va., to visit a brother, and there met the prosecutrix, a sister of his brother's wife, then about sixteen years old. In the latter part of 1925, he accompanied his brother from Princeton to Hagerstown, Md., and there, about two months later, he went to board with the mother of prosecutrix, who had in the meantime moved from Princeton to Hagerstown. Some four or five months after this, prosecutrix returned to Princeton, where she gave birth to a child, the father of whom admittedly was not defendant. Defendant followed her back to Princeton, and, though apprized of her delinquency, proposed marriage, and a trip to Baltimore was made for this purpose. The marriage, for some reason not shown in the evidence, was never consummated, but defendant and prosecutrix had unlawful relations in Baltimore for the first time, and after a few days returned to Hagerstown, and informed their respective families they had been married, and thereafter lived together in Hagerstown as husband and

56

wife for more than two years, and then removed to Asheville, N. C., where the same relationship continued for five or six months, after which they moved to Atlanta, Ga., where defendant was employed as the driver for a bus line operating between Atlanta and nearby cities, and where they lived together in a hotel for one month. In June, 1929, defendant purchased a railroad ticket for the prosecutrix from Atlanta to the residence of her mother in Princeton, W. Va., and gave her money for expenses, and told her he would come on to Princeton in about a month, and join her, and continue to live with her as he had for the past two and a half or three years. She accordingly made the trip alone to West Virginia, where, about a month later, defendant, without previous notice to her, rejoined her, and lived with her two or three days, stating to her at the time that he was enroute to Chicago to get a bus for delivery in Atlanta, and had dropped off to see her on the way. Shortly after defendant left West Virginia, he was married in Georgia, and did not see prosecutrix again until the trial. During the period of their relationship, two children were born, one of whom died, and one of whom survived.

At the close of all the evidence, the defendant moved that the jury be instructed to find him not guilty on the ground that the evidence as to the purpose of the alleged transportation was insufficient to warrant a conviction, and insufficient to justify the submission of the case to the jury. This instruction the court refused to give, and this we think was error.

■ The purpose of the Mann Act, as was said by the Supreme Court in the Caminetti Case, 242 U. S. 470, 491, 37 S. Ct. 192, 197, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168, is "to reach and punish the movement in interstate commerce of women and girls with a view to the accomplishment of the unlawful purposes prohibited." It was not intended to make unlawful a journey from one state to another, though followed by unlawful cohabitation, where the journey was not with a view to the accomplishment of that purpose. Accordingly we held in Van Pelt v. United States, 240 F. 346, that before the defendant in that case, who was charged with the violation of this statute in the same manner as the defendant in this, could properly be convicted, there must be evidence that his purpose in transporting the woman in interstate commerce was that he might have sexual intercourse with her. If the trip was a means to that end, there was a violation of the statute. If it was not, there was no violation. And so we said, in Fisher v. United States, 266 F. 667, the mere fact that a journey from one state to another is followed by such intercourse, when the journey was not for that purpose, but wholly for other reasons to which intercourse was not related, cannot be regarded as a violation of the statute.

In the instant case, defendant and the prosecutrix had openly lived together as husband and wife for a period of approximately three years. They had moved about from place to place, and from state to state. Children had been born and acknowledged, and there is not a scintilla of evidence anywhere which would justify us in saying that this relationship might not have continued undisturbed, indefinitely and anywhere.

In these circumstances, it is important to determine whether the journey from Atlanta to Princeton, which is the charge laid in the indictment, was for the purpose of having or continuing sexual relation, or was for another purpose. On this subject, the prosecutrix's evidence is that defendant told her to go to Princeton, and that he would follow her there in about a month, and that they would thereafter continue to live as husband and wife. The purpose of the journey, so far at least as she was concerned, was to visit her mother. So far as defendant was concerned, it could not have been to effectuate or continue the improper relations, because it necessarily resulted in the suspension of these relations, which, at the time of the parting, had existed regularly for about three years, and which, except for the separation, would have remained unchanged. Defendant was then regularly employed in Atlanta. His removal to West Virginia to reside would have meant the loss of his job, and there is not the slightest intimation that he ever had such an intention. In his testimony at the trial, he said he was manager of the line of buses operating between Chattanooga and Atlanta, and his work necessarily demanded his presence in one or the other of these places. There is every reason, therefore, to conclude that he never intended to leave Atlanta permanently, and, if the evidence of the prosecutrix is accepted that he assured her, when she was returning to her mother's home, that their relationship as husband and wife would continue as formerly, he meant no more than that he would go for her at the end of her visit, and bring her back to Atlanta where that relationship would be resumed, and this was the construction she herself placed upon

it. Her evidence moreover shows that, when a month later he rejoined her in West Virginia, it was a mere stopover on his way to Chicago, not contemplated at the time she left him, and wholly inconsistent with the idea that he intended at the time, or at any other time, to remove her to West Virginia for the purpose of having sexual relations with her there. That he had such relations in the two or three days of his visit, as she claims, is a mere incident of their presence there together, and could not, as we see the situation, have been the object and purpose of his sending her there a month earlier. We think the evidence convincingly shows that the journey to West Virginia was not only not for the purpose of concubinage, but, on the contrary, was induced by a desire on the part of the defendant, in the circumstances both selfish and cruel, to bring an end to the relationship, and to pave the way to a separation, and to the opportunity to him thereby to accomplish a legal marriage with another, and this in fact occurred some two months later. In short, we think the evidence shows that defendant's stopover in Princeton, and the resumption for two or three days of their unlawful habits, was neither contemplated nor designed when he sent her back to her mother, but was a mere accident of a business trip to Chicago not then thought of. The immoral acts resulting from this stopover were not a violation of the federal statute, but exclusively within the police power of the state in which committed.

We think, therefore, binding instructions should have been given, and for the failure of the trial court in this respect, the judgment should be, and is reversed.