## MALAGA v. UNITED STATES.
### No. 2637.

Circuit Court of Appeals, First Circuit.
April 7, 1932.

MORTON, Circuit Judge, dissenting.

William H. Lewis, of Boston, Mass. (Matthew L. McGrath, of Boston, Mass., on the brief), for appellant.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., and Hubert C. Thompson, Asst. U. S. Atty., both of Boston, Mass., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

The appellant was convicted in the District Court of Massachusetts under section 2 of the White Slave Traffic Act (18 USCA § 398), and appealed to this court.

So much of the section of the statute, under which the appellant was indicted, as applies to this case, reads as follows: "Any person who shall knowingly transport or cause to be transported, * * * in interstate or foreign commerce, * * * any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice; * * * shall * * * upon conviction * * * be punished. * * *"

The appellant was indicted for unlawfully, willfully, knowingly, and feloniously transporting one Elizabeth Martin from Butztown in Pennsylvania to Boston, Mass., "for the purpose of prostitution, and with the in-

tent and purpose to induce, entice or compel such woman to become a prostitute and to engage in other immoral practices."

The appellant assigned as errors:

1. The District Court erred in the admission and exclusion of certain evidence at the trial, as more particularly appears by his bill of exceptions.

2. The District Court erred in refusing to make certain requests and rulings, as appears also by his bill of exceptions.

3. The District Court erred in its instructions given to the jury, as appears by his bill of exceptions.

The exceptions covered by the assignment of errors and on which the appellant chiefly relies as disclosing prejudicial error are: (1) The admission of an alleged confession; (2) the admission of certain evidence of a physician who testified to treating the Martin girl; (3) the exclusion of certain evidence as to places where a witness by the name of Margaret Wheeler "worked"; (4) the refusal to give certain instructions requested by counsel for the appellant as to the proof necessary for conviction under the indictment; and (5) (a) to so much of the judge's charge as related to the admission of alleged confessions; (b) to that part of the judge's charge in which he stated that the defendant told a string of lies; (c) to that part of the judge's charge in which he stated that the appellant married the Martin girl to prevent her testifying against him; (d) to that part of the judge's charge in which he said at the close: "If you agree with me, you will find this man guilty. If, however, you do not agree with me, it is your right and duty to find him not guilty."

The evidence showing a violation of the provisions of the White Slave Traffic Act was chiefly in the form of admissions to several police officers by whom the appellant was interviewed as to his knowledge of the murder of one Samuel Reinstein in a Boston hotel, corroborated to some extent by the witness Margaret Wheeler. We think the testimony of the police officers was properly admitted, and the question of whether it was voluntarily made was, under the federal rule, properly submitted to the jury. Wilson v. United States, 162 U. S. 613, 16 S. Ct. 895, 40 L. Ed. 1090; Hale v. United States (C. C. A.) 25 F.(2d) 430, 438.

In view of the conclusions hereafter reached, it is unnecessary to comment on the exception to the admission of the testimony of a doctor who treated the Martin girl and

sent her to a hospital for an operation of some kind. Against objection the government did not offer proof of the nature of the operation. Counsel for the government attempted to comment on it, apparently forgetting the evidence was not offered, but was reminded by the court at the time that no such testimony was in the case.

The exceptions to the admission of the testimony of the Wheeler girl and to the exclusion of the answers to certain inquiries of her, and also to the refusal of the trial judge to give the instruction to the jury requested by the appellant's counsel relating to the admission of the alleged confession, and the definition of reasonable doubt, are without merit; but the refusal to give certain requested instructions as to the proof necessary to convict under the indictment raises more serious questions, and, in view of the charge in the indictment and of the evidence, we think the requested instructions should have been given.

It appears from the admissions by the appellant at the interviews at the police station that he lived in Easton, Pa.; that he had met there the young woman Elizabeth Martin, familiarly known as Betty Martin, and had lived there with her as man and wife for nearly a year; that she was "in the life" there, as it is termed by those engaged in the practice of prostitution; that in June, 1929, they left Easton for Boston in an automobile, stopping over night at Bridgeport, Conn., where they registered as man and wife, and after arriving in Boston they registered as man and wife at the Arlington Hotel, where they continued their illicit relations; that some time after arriving in Boston, he met on the street an acquaintance by the name of Schwartz, whom he had met in Easton, and asked him where the Martin girl could get into a house of prostitution in Boston where she could "work," as the practice is termed by those engaged in it, and was referred to a house on Canton street and another on Dover street; he admitted taking her to one of these places each morning and calling for her in his car at about 11.30 at night; that her earnings in this business were from $50 to $75 per week, which she brought and left on the dresser in their room, though he denied taking any of it.

This practice continued until about the time of the Reinstein murder, when they returned to Easton. At some time prior to the trial of the appellant in the District Court, it appears they were married, though the record does not specifically disclose when the

marriage took place. According to his admission, they were not married when they came to Boston in June, 1929, nor when he appeared before the assistant district attorney in September. The only reference to their marriage is in the testimony of one of the police officers, who in cross-examination testified that he saw a marriage certificate shown to the judge in the state court, presumably at a hearing the following October.

While there has been no decision by the Supreme Court directly interpreting the act in this respect, we think that so much of section 2 as is quoted above describes but one offense, viz., the transportation of women and girls in interstate commerce for any or all of the purposes enumerated therein. The offense, therefore, may be charged by alleging that the transportation was for two or more of the purposes set forth in the statute, if alleged in the conjunctive, without being objectionable on the ground of duplicity. Blain v. United States (C. C. A.) 22 F. (2d) 393; Bishop's New Crim. Pro. (4th Ed.) Vol. 1, § 436; United States v. Brand (D. C.) 229 F. 847; Ackley v. United States (C. C. A.) 200 F. 217; Crain v. United States, 162 U. S. 625, 636, 16 S. Ct. 952, 40 L. Ed. 1097; Hays v. United States, 242 U. S. 470, 484, 486, 37 S. Ct. 192, 194, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168. What constitutes prostitution and "other immoral practices" is defined in United States v. Bitty, 208 U. S. 393, 28 S. Ct. 396, 52 L. Ed. 543.

The aim of the act is to prohibit interstate transportation of women and girls for any immoral purpose associated with sexual intercourse, and not to punish the offender for the consummation of the purpose for which the transportation is undertaken, which is solely within the powers of the states. Hoke v. United States, 227 U. S. 308, 321, 33 S. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913E, 905. It is the transportation in interstate commerce that gives the prohibited acts the status of a federal offense. It is not necessary to prove that any of the purposes were consummated, if the intent with which the transportation is undertaken is within the prohibition of the Act. United States v. Brand, supra, page 850 of 229 F.; Rizzo v. United States (C. C. A.) 275 F. 51.

As to whether interstate transportation for the purpose of inducing or enticing a woman to engage in "immoral practices," if that were the sole purpose alleged, sets forth

with sufficient particularity an offense under the statute, we think it is unnecessary to decide in this case, as no objection on that ground was raised to the introduction of the evidence that was received in support of this particular allegation, nor to the form of the indictment, and the allegation in the form set forth in the indictment is not supported by the evidence. But see Hays v. United States, supra, in which case the respondent was charged under one count "with intent then and there to induce and coerce the said woman, and intending that she should be induced and coerced to engage in prostitution, debauchery, and other immoral practices"; and under a second count it was alleged "that on the same date the defendants persuaded, induced, enticed, and coerced the same woman to be transported from Oklahoma City to Wichita, Kansas, with the purpose and intent to induce and coerce her to engage in prostitution, debauchery, and other immoral practices at and within the state of Kansas."

In this case the issue was expressly raised, by counsel for Hays, that the allegation that the girl was transported for the purpose of inducing her to engage in prostitution and debauchery was not made out, and that the allegation that she was transported to induce her to engage in "other immoral practices" by reason of its generality was insufficient to charge an offense; and, although it appeared from the opinion rendered in the case in the Circuit Court of Appeals, 231 F. 106, that the evidence showed that the transportation was solely for inducing the girl to have sexual intercourse with Hays, the conviction of Hays was affirmed by the Supreme Court. Also see Huffman v. United States (C. C. A.) 259 F. 35.

That this respondent and the Martin woman had sexual intercourse on the way to Boston and after arriving there is not denied. The jury was instructed that this alone was sufficient to constitute the offense set forth in the statute, but it was not pointed out to the jury that this was not the offense charged in the indictment. By this instruction we think the jury must have been misled as to the offense actually charged in the indictment. Even though the evidence warranted it, the respondent could not be convicted of an offense with which he was not charged.

The charge in the indictment against this appellant is substantially in the language of the statute, that he knowingly transported the Martin woman to Boston "for the purpose of prostitution and with the intent and purpose to induce, entice and compel her to

become a prostitute, and to engage in other immoral practices."

Assuming that the offense of transportation for the purpose of inducing, enticing, and compelling the Martin girl to engage in other "immoral practices" is sufficiently set forth, the evidence as disclosed by the record in this case did not warrant a finding that the purpose in transporting the Martin woman to Boston was to "induce, entice or compel" her *to become* a prostitute, or to *"induce, entice* or *compel"* (italics supplied) her to have sexual intercourse with the respondent. So far as anything appears in the record, they could have continued their illicit relations in Easton, and she was also already "in the life" there. Van Pelt v. United States (C. C. A.) 240 F. 346; Hunter v. United States (C. C. A.) 45 F.(2d) 55, 73 A. L. R. 870.

Though none were given, under proper instructions the jury might have found upon the evidence in the case that the respondent did bring her to Boston for the purpose and with the understanding that she would voluntarily enter houses of prostitution there; but, in view of the instruction as to the effect of having sexual intercourse with the woman in Boston, the jury, in order to convict, were not required to consider whether she was transported "for the purpose of prostitution." If they did, without any instruction as to the proof necessary to establish this element of the offense, they may not have given any consideration to the claim of the appellant, viz., that her entering houses of prostitution in Boston was her own proposal after their arrival; and, while he may have aided her by making inquiries as to where she could find such houses, that it was not the purpose for which he transported her to Boston. While the jury may not have believed him, especially in view of the emphatic expression of opinion by the presiding judge as to respondent's lack of veracity, he was entitled to have the issues under the indictment fairly presented to the jury.

The exceptions to the other parts of the judge's charge, however, have a broader significance than the mere statements excepted to. Counsel for appellant strenuously argued before this court that the District Judge overstepped the bounds within which a federal judge at nisi prius may express his opinion on the facts, and in an argumentative and unreasonable manner impressed upon the jury that the appellant was guilty, and to such an extent that he did not have a fair and impartial trial.

While the judge reminded the jury that his opinion as to the facts should not control theirs, yet from the record it appears that he more than once informed them that in his opinion the respondent was a liar, and finally instructed them that, if they believed as he did, they should find the respondent guilty; though he added that, if they did not, it was their right and duty to acquit him, and that, if they had any reasonable doubt of his guilt, it should be resolved in his favor. In this connection counsel for appellant calls our attention to other parts of the charge, which he contends render the parts expressly excepted to extremely prejudicial to the appellant, and particularly certain comments therein on counsel's personal characteristics as displayed in the trial of the case, and tending to prejudice him with the jury and thereby prejudice the appellant. Withrow v. United States (C. C. A.) 1 F.(2d) 858; Williams v. West Bay City, 119 Mich. 395, 78 N. W. 328.

In commenting on counsel's skill as a football player, the trial judge told the jury that he was the most skillful player of his day "in straight rushes, and his twistings and his turnings," and added, "he is just as skillful now, and even more so, in the practice of the law, in his straight rushes, and his twistings and his turning." What the jury may have inferred from this comparison it is difficult to tell from cold type. It might depend on the inflection and manner of expression.

Counsel, however, complains that the trial judge did not stop here, but, after comparing counsel to some of the great actors, Booth, Salvini, and Henry Irving, said to the jury: "You noticed, gentlemen, probably how on the first day of the trial he made light of everything, referred to the facts here as if it were like an escapade of a wild college student in taking a woman to a hotel and spending the night with her. You remember yesterday how his whole attitude changed, how the tone of his wonderful voice changed, how deep the tones were when he was speaking about his client, how fierce the tones were and sarcastic when he was speaking about the police officers. Gentlemen, that is all acting. Do not be misled by it."

Again, referring to appellant's testimony as to his reason for coming to Boston in June, 1929, that he brought the Martin girl to Boston for a vacation—the testimony of the appellant was that he came for a vacation—and that he loved her and intended to marry her, the trial judge said:

"His statement is that he was in love with this girl and brought her on to Boston for a vacation. Mr. Lewis has brought the sacred word of 'love' into this case, and has besmirched it with filth, with mud and filth. It was unworthy of him. Do you believe that story, gentlemen? To me it is perfectly plain that it is a lie.

"This man on the stand—this is entirely for you, gentlemen, but I am giving you my opinion, as I have a right to do—this man on the stand told a string of lies from the minute he started until the time he ended. That is my opinion of his evidence, but that is not binding on you, gentlemen. Did he love this girl, and bring her on here for a vacation—and stop at the Hotel Arlington—not know where she went during the practically entire daytime of every day? That was the vacation of a man who loved a woman he was going to marry!"

And, for some reason which the record does not disclose, the trial judge, in instructing the jury in reference to the marriage between the appellant and the Martin girl, said to the jury: "And now I come, Mr. Foreman and gentlemen, to the most degrading part of the whole thing—cowardly. He married the woman merely to prevent her being able to testify against him—a depth of meanness and cowardice which I have no words properly to explain my disgust for. All this, however, gentlemen, is for you to consider."

We have not commented on the remarks of counsel for the government in the opening and closing of the case, since, although excepted to at the time, they are not covered by the assignments of error. They appear to have been unintentional overstatements, and were sufficiently taken care of in the judge's charge.

The charge was brief and covers, in addition to the portions objected to, little more than the usual general instructions as to the respective functions of court and jury, the burden of proof, and what is meant by reasonable doubt.

The cases are numerous where judgments have been reversed for remarks by a federal judge on the ground that he exceeded his prerogative in expressing his opinion on the facts. It is impossible, however, from the cases to find the dividing line between what is objectionable and what is not, and to lay down a hard and fast rule by which the doubtful cases can be placed on one side or the other of the dividing line.

In Starr v. United States, 153 U. S. 614, 626, 627, 14 S. Ct. 919, 923, 38 L. Ed. 841, Chief Justice Fuller, speaking for the court, said:

"It is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling. Hicks v. United States, 150 U. S. 442, 452, 14 S. Ct. 144, 37 L. Ed. 1137. The circumstances of this case apparently aroused the indignation of the learned judge in an uncommon degree; and that indignation was expressed in terms which were not consistent with due regard to the right and duty of the jury to exercise an independent judgment in the premises, or with the circumspection and caution which should characterize judicial utterances. * * *

"Whatever special necessity for enforcing the law in all its rigor there may be in a particular quarter of the country, the rules by which, and the manner in which, the administration of justice should be conducted, are the same everywhere; and argumentative matter of this sort should not be thrown into the scales by the judicial officer who holds them."

In Hickory v. United States, 160 U. S. 408, 425, 16 S. Ct. 327, 333, 40 L. Ed. 474, in which case the trial judge denounced the testimony of the accused as perjury, Judge, later Chief Justice, White said: "Such denunciation of the testimony of an accused is without legal warrant. Allison v. United States, 160 U. S. 203, 16 S. Ct. 252, 40 L. Ed. 395. Indeed, this instruction, besides giving rise to this error, was also, if possible, more markedly wrong from the implications which it conveyed to the jury. It substantially said to them, 'The circumstances as to the killing and concealment cannot be bribed, but the defendant can be; therefore you must consider that these circumstances outweigh his testimony, and it is hence your duty to convict him.' In Starr v. United States, ubi supra, speaking through Mr. Chief Justice Fuller, this court called attention to the fact that there were limitations on the power of a federal court, in commenting on the facts of a case, when instructing a jury; limitations inherent in and implied from the very nature of the judicial office. In Reynolds v. United States, 98 U. S. 145, 168, 25 L. Ed. 244, speaking through Mr. Chief Justice Waite, this court also said on the same subject: '* * * Every appeal by the court to the passions or prejudices of the jury should be promptly rebuked, and * * * it is the

imperative duty of the reviewing court to take care that wrong is not done in this way. * * *' Admonished by the duty resting on us in this regard, we feel obliged to say that the charge which we have considered crosses the line which separates the impartial exercise of the judicial function from the region of partisanship where reason is disturbed, passions excited, and prejudices are necessarily called into play."

Other instances in which the language of the trial judge in instructing the jury has been held to overstep the bounds of the judicial prerogative may be found in Rudd v. United States (C. C. A.) 173 F. 912, 914; Weare v. United States (C. C. A.) 1 F.(2d) 617, 618; Cook v. United States (C. C. A.) 14 F.(2d) 833; Cook v. United States (C. C. A.) 18 F.(2d) 50; Barham v. United States (C. C. A.) 14 F.(2d) 835; Buchanan v. United States (C. C. A.) 15 F.(2d) 496; Wallace v. United States (C. C. A.) 291 F. 972.

It will appear, however, from an examination of the cases, that the federal judges are not all in accord as to when the bounds have been overstepped. Dissents will be found in several of the cases above cited, and also see Simmons v. United States, 142 U. S. 148, 12 S. Ct. 171, 35 L. Ed. 968; Graham v. United States, 231 U. S. 474, 480, 34 S. Ct. 148, 58 L. Ed. 319; Horning v. District of Columbia, 254 U. S. 135, in which case see dissenting opinion on page 139, 41 S. Ct. 53, 65 L. Ed. 185.

It is evident from an examination of these cases that each case, in a large measure, stands on its own bottom, except as to the recognition of certain general principles.

The right of a trial judge to aid the jury in arriving at a just verdict is a valuable and important judicial function in the administration of justice. We have no desire to limit it except within its proper sphere. It is a trite saying, but a true one, that in the interest of justice a judge should be permitted to control the conduct of the case rather than counsel for the litigants. A trial in a court of justice should not be a game over which the judge presides in the capacity of umpire to see that certain rules are observed, but a proceeding in which a just verdict is the sole aim.

■ The trial judge must declare the law governing the rights of the parties and determine what evidence it is proper for the jury to consider under the established rules of evidence. He should also by reason of his training in analyzing testimony, and experience in determining the credibility of witnesses, and the influence that personal interest, bias, and prejudice have in influencing witnesses, be permitted to assist the jury in determining what evidence has a bearing on the disputed issues in the case, and aid them in weighing the evidence, taking care that the jurors clearly understand that it is their own judgment which must finally determine what the facts are. To this end a judge in the federal courts may inform the jury of the impression certain evidence makes on his mind. But having in mind the weight that jurors ordinarily give to the opinion of the presiding justice, he should take especial care that they understand that it is their independent judgment which must finally determine the factual issues, and are not unduly influenced by the opinion of the court.

But a statement of facts not in evidence, an argumentative discourse, a repeated assertion that the respondent or other witness is not telling the truth, or a direct or indirect instruction that a respondent in a criminal case is guilty, may not be sufficiently neutralized by a reminder that it is for the jury to say.

That the record before us gives a full and fair picture of what occurred in the trial below, we are reluctant to believe; but we cannot base our conclusions on conjecture, or on what probably occurred. At the close of the instructions to the jury, counsel for the appellant in taking exceptions to the comments of the court on the testimony of the respondent and to his final instruction that, if the jury believed as he did they would find the respondent guilty, said: "That is almost equivalent to directing a verdict, your Honor." To which the presiding justice replied: "That is what I meant to do."

That this was said in the hearing of the jury, or intended to be heard by them, we cannot believe, although they had not retired. Counsel, apparently, as is customary, had stepped to the bench to note exceptions to the charge, and, if need be, to discuss them with the court. It was, no doubt, intended to be "off the record." That it was a mere facetious remark, however, we are not warranted in assuming in the light of the charge. It has significance, not as an instruction to the jury, but in view of the parts of the charge already alluded to.

■ We think a trial judge should hesitate in expressing his opinion on the guilt of a respondent in a criminal case, though he may

be permitted to give his opinion on the evidentiary facts. Argumentative discussion on the effect of evidence as proof, or the inference to be drawn from the acts of witnesses, or of the respondent in a criminal case, are universally recognized as out of place from the bench.

One of the underlying principles of our jurisprudence is that the scales of justice in the trial of a cause must be held in even balance by the presiding judge. It is our pride that under our Constitution and laws a respondent in a criminal case, though guilty, is entitled to a fair and impartial trial.

We regret exceedingly the delay in the final disposition of this case, which will ensue from a reversal of the judgment in the District Court; but the misleading instruction given as to what would alone constitute the offense under the statute, and the failure to instruct the jury as to the real issues under the offense described in the indictment, together with the parts of the charge to the jury to which we have referred, resulted, we think, in depriving the respondent of the impartial trial to which he is entitled under our Constitution and laws, and the case should be remanded for a new trial.

The judgment of the District Court is reversed, the verdict is set aside, and the case is remanded to that court for a new trial.

MORTON, Circuit Judge (dissenting).

With so much of the foregoing opinion as holds that the conviction should be set aside because the jury was not instructed with sufficient clearness that to warrant a verdict of guilty the interstate transportation of the woman must have been undertaken for the unlawful purpose specified in the indictment, I agree. As the defendant and the woman were already living together as man and wife before the journey began and made the journey in that relationship, acts of sexual intercourse during it or following it would be much less indicative than in the usual case under this statute of the guilty purpose necessary for conviction. While the judge correctly stated the law at the beginning of his charge, he did not point out the important distinction just referred to, but on the contrary strongly intimated to the jury, if indeed he did not directly tell them, that acts of sexual intercourse between the defendant and the woman during the journey or after their arrival in Boston would be a "commission of the offense."

From the rest of the opinion I dissent.

It is unnecessary to the decision; it is to a considerable extent based on parts of the charge to which no objection was made at the trial and no exception was taken; it ignores facts agreed to by counsel at the argument of these exceptions; and it seems to me distinctly unfair to the trial judge.

The judge's comment on counsel which is criticized should be read with the additional fact in mind, freely conceded at the argument, that the judge and the counsel had been on friendly terms since they were students together. It was an obvious pleasantry based, as everybody who heard it understood, on friendly relations between the two. If the counsel thought the joke too rough, or that it bore unfairly against his client, he should have said so at the time when the unfairness, if any, could have been corrected. But he made no such objection and took no such exception.

The final remark of counsel, "That is almost equivalent to directing a verdict, your Honor," and the judge's reply, "That is what I meant to do," which are referred to in the opinion, were made at the bench during a conference between the counsel and the judge. This was admitted by counsel at the argument. The talk was meant to be "off the record"; it was not intended for the jury's ears, and there is nothing to indicate that it was heard by them. If not, it certainly did no harm. Counsel made no objection to the remark at the time and took no exception. It was not part of the trial and has no bearing on the questions before us.