# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-1615
_____

United States of America

*Plaintiff - Appellee*

v.

Michael Marble

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: January 12, 2024
Filed: July 23, 2024
[Unpublished]

_____

Before SMITH, Chief Judge,[1] GRUENDER and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Michael Marble appeals his convictions for three counts of distribution of methamphetamine, one count of possession with intent to distribute

---

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

methamphetamine, and one count of possession of a firearm in furtherance of a drug trafficking crime. He challenges the sufficiency of the evidence. Because sufficient evidence supports each conviction, we affirm the judgment of the district court.[2]

## I. *Background*

In exchange for potential leniency, Steven Howard agreed with Detective Jeran Smith to cooperate with law enforcement and buy methamphetamine from Marble. Howard then participated in three controlled buys from Marble at Marble's home. Howard used a video-recording device during the buys. Still images from the video footage separately show Marble and a firearm, but the footage does not show Marble with either the firearm or any drugs.

Police obtained a warrant to search Marble's home. The search produced methamphetamine, scales, two firearms, and marijuana. Police found a loaded firearm, along with jewelry, a watch, and torn baggies, on a desk in a room used in part as a home music studio. Police also found a brown box containing methamphetamine in a laundry dryer located in that same room. Marble admitted to knowing that guns and methamphetamine were in the home, and he described the brown box containing methamphetamine. At the time of the search, Brad Dolls, Marble, Marble's wife, and another man all lived in the home.

A federal grand jury indicted Marble, alleging three counts of distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); one count of possession of methamphetamine with intent to distribute, in violation of § 841(a)(1) and (b)(1)(C); and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

At trial, Howard testified to purchasing methamphetamine from Marble three times. But Howard admitted to potentially being under the influence of drugs at the

---

[2]The Honorable James M. Moody Jr., United States District Judge for the Eastern District of Arkansas.

time of the controlled buys. The defense moved the court to order Howard to take a drug test, noting that Howard's eyes were red, his speech was slurred, and he did not seem to understand what was happening. The court declined, expressing doubt that it had authority to do so.

The prosecution called other witnesses. Dolls testified that he had lived in the home for about a month but that the home belonged to Marble. Dolls said that the firearm, jewelry, and watch found on the desk belonged to Marble and that Marble was a singer who used the desk while producing music. Furthermore, Dolls testified that he had seen Marble carrying the firearm and that he regularly saw Marble dealing methamphetamine. Dolls denied owning the methamphetamine, but he admitted to sleeping in the room with the desk.

The prosecution also introduced into evidence videos from the controlled buys. In one clip, a voice could be heard saying, "I need that money to go and re-up." R. Doc. 66, at 93. Dolls identified Marble as the speaker. Detective Smith testified that "re-up" is a term that refers to obtaining drugs and that he believed Marble was the speaker, though he could not say that definitively.

Additionally, Special Agent Stephen Cupp testified that drug dealers often keep firearms for their protection and that it is "very common" for individuals to be arrested in possession of both a distributable quantity of drugs and a firearm. R. Doc. 67, at 38.

At the close of the prosecution's case-in-chief, the defense moved for a judgment of acquittal. The court denied that motion. The defense then put on evidence and never renewed its motion. The jury convicted Marble on all counts. Marble appeals.

## II. *Discussion*

Marble argues that the record contains insufficient evidence to support any of his convictions. Because Marble did not renew his motion for a judgment of acquittal at the close of all the evidence, we review the district court's judgment for plain error. *See United States v. Wadena*, 152 F.3d 831, 853 (8th Cir. 1998).[3] A failure of proof as to any essential element would be a plain error. *Id.*

Marble first argues that the government failed to prove that he knowingly sold methamphetamine to Howard. Marble points out that the recordings of the controlled buys never show him with either firearms or drugs. Although authorities found drugs in his home, without more, mere proximity to drugs cannot support a conviction for distribution. *See United States v. Scofield*, 433 F.3d 580, 586 (8th Cir. 2006). Marble

---

[3]Our precedents diverge on the question whether a failure to renew a motion for judgment of acquittal preserves a sufficiency-of-the-evidence argument, thus warranting de novo review, or waives the argument, resulting in only plain error review. *See United States v. King*, 854 F.3d 433, 441 (8th Cir. 2017) (noting the conflict). *Compare United States v. Timlick*, 481 F.3d 1080, 1082 (8th Cir. 2007) (applying de novo review when the defendant did not put on evidence and did not renew her motion for judgment of acquittal), *and United States v. Vinton*, 429 F.3d 811, 815 (8th Cir. 2005) ("This [sufficiency] argument was preserved by [the defendant's] motion for judgment of acquittal at the close of the government's case."), *with Wadena*, 152 F.3d at 853 (noting that a failure to renew a motion for judgment of acquittal constitutes waiver resulting in plain error review), *Edwards v. United States*, 333 F.2d 588, 589 (8th Cir. 1964) (applying plain error review because the defendant did not renew his motion for judgment of acquittal and so did not preserve his sufficiency argument), *and Huffman v. United States*, 259 F. 35, 37 (8th Cir. 1919) (holding that the defendant's failure to renew a motion for a directed verdict waived his sufficiency argument). It appears that our older precedents hold that a defendant must renew a motion for judgment of acquittal to preserve a sufficiency argument, at least when, as here, the defendant put on evidence. *See Edwards*, 333 F.2d at 589; *Huffman*, 259 F. at 37; *see also Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("[W]hen faced with conflicting panel opinions, the earliest opinion must be followed as it should have controlled the subsequent panels that created the conflict." (internal quotation marks omitted)). Here, whether we apply de novo or plain error review, the outcome is the same.

also contends that Howard appeared to be under the influence of drugs when he testified, destroying his credibility.

We hold that the evidence supports Marble's convictions for distribution of methamphetamine. "To prove that a defendant distributed methamphetamine in violation of 21 U.S.C. § 841(a)(1), the government is required to prove that the defendant distributed the methamphetamine, and that he knew it was a controlled substance at the time of distribution." *United States v. Ramos*, 852 F.3d 747, 753 (8th Cir. 2017). "[I]t is within the province of the jury to resolve conflicting testimony and make credibility determinations, and we will not disturb those findings on appeal." *Id.* at 754. And "we do not consider attacks on witnesses' credibility when we are evaluating an appeal based upon the sufficiency of evidence." *United States v. Funchess*, 422 F.3d 698, 701 (8th Cir. 2005).

The evidence adduced at trial showed that Marble sold methamphetamine on at least three occasions. Howard testified that he purchased methamphetamine from Marble on those three occasions. Howard's impairment, if any, went to his credibility, which was for the jury to determine. In addition, Dolls testified that he saw Marble's frequent, near-daily methamphetamine sales. Marble himself admitted to knowing that there was methamphetamine in his home. Plus, the government introduced recordings of the controlled buys. These facts all corroborated Howard's testimony.

Marble next argues that the evidence is insufficient to support his conviction for possession with intent to distribute methamphetamine. He contends that the government failed to prove that he possessed methamphetamine. He argues that he did not have dominion over the room where the methamphetamine was found because Dolls occupied that room. Marble further notes that police did not find any methamphetamine in the bedroom that he occupied. And he disputes constructive possession, despite his dominion over the premises, because multiple people resided there.

Marble's argument is unpersuasive. The record evidence sufficiently supports Marble's conviction for possession of methamphetamine. "To convict an individual of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1), the government has the burden of proving beyond a reasonable doubt that the defendant both knowingly possessed and intended to distribute drugs." *United States v. Bradshaw*, 955 F.3d 699, 706 (8th Cir. 2020) (cleaned up). Marble challenges only the government's proof of possession.

To prove the element of possession, the government need only prove constructive possession. *United States v. Lee*, 356 F.3d 831, 836–37 (8th Cir. 2003). "[C]onstructive possession requires knowledge of an object, the ability to control it, and the intent to do so." *Id.* at 837. Marble is correct that dominion over a home where contraband is found is not always sufficient proof of possession, as "constructive possession requires both knowledge that the contraband is present and dominion over the premises where the contraband is located." *United States v. Ways*, 832 F.3d 887, 897 (8th Cir. 2016). In some cases, dominion alone "give[s] rise to a strong inference of knowledge" and is sufficient to prove constructive possession. *Ramos*, 852 F.3d at 754 (quoting *United States v. Dooley*, 580 F.3d 682, 686 (8th Cir. 2009)) (discussing possession of a firearm). But when multiple people jointly occupy a home, one occupant's dominion over the home is insufficient to prove constructive possession, and additional evidence must link the occupant to the contraband. *Id.* at 754–55.

Here, Marble had dominion over the home. Marble lived in the home and, according to Dolls, the home belonged to Marble. Dolls's testimony that Marble used the desk while producing music supported a finding that Marble also had dominion over the room containing the studio and desk, even though Dolls slept there. The jury could reasonably infer that Marble had dominion over the dryer in that same room.

And additional evidence linked Marble to the methamphetamine. Marble admitted to knowing that there was methamphetamine in his home, and he told Smith

that it was in a brown box. Dolls denied owning the methamphetamine and testified that he regularly saw Marble selling methamphetamine. The jury's verdict is further buttressed by Howard's testimony that Marble sold him methamphetamine, as well as the drug-buy recordings. Thus, sufficient evidence supports Marble's conviction for possession of methamphetamine with intent to distribute.

Finally, Marble argues that the government failed to prove that he possessed a firearm and that there was a nexus between the firearm and drug trafficking. He points out that police did not find any firearms in his bedroom and that Dolls occupied the room where the firearm was found. And he contends that Cupp's testimony established only the general proposition that firearms are sometimes used in drug trafficking and did not establish any connection between drug trafficking and the firearm found in Marble's home.

Marble was convicted of violating 18 U.S.C. § 924(c)(1)(A), which penalizes a "person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." Constructive possession is sufficient to prove the element of possession. *United States v. Cowley*, 34 F.4th 636, 641 (8th Cir. 2022). As noted above, constructive possession of contraband in a home requires knowledge of the contraband and dominion over the premises. *Ways*, 832 F.3d at 897. In cases of joint occupancy, dominion alone does not prove constructive possession and must be supplemented by some link between the occupant and the contraband. *Ramos*, 852 F.3d at 754–55.

As noted above, Marble had dominion over the home and the studio. Several facts link Marble to the firearm. Dolls testified that the firearm belonged to Marble and that he saw Marble carrying it. Also, police found the firearm on a desk in Marble's studio and found a watch and jewelry beside the firearm; Dolls testified that Marble used the desk, owned the watch and jewelry, and was a singer. Further, Marble admitted to knowing that two firearms were present in his home. Applying circuit precedent, this evidence was sufficient to show constructive possession.

Marble also argues that the government failed to prove a connection between the firearm and drug trafficking. To prove that a defendant possessed a firearm in furtherance of drug trafficking, the government must prove a nexus between the possession and the drug crime "such that this possession had the effect of 'furthering, advancing or helping forward' the drug crime." *United States v. Sanchez-Garcia*, 461 F.3d 939, 946 (8th Cir. 2006) (quoting *United States v. Hamilton*, 332 F.3d 1144, 1149 (8th Cir. 2003)). Mere simultaneous possession of drugs and a firearm is insufficient, but "evidence that the firearm was used for protection, was kept near the drugs, or was in close proximity to the defendant during drug transactions" may allow the jury "to infer that the defendant's possession of the firearm facilitated the drug crime." *Id.* at 946–47.

In *Sanchez-Garcia*, we held that the evidence was sufficient when law enforcement found a scale and distribution-quantity drugs in the kitchen and a loaded firearm in the adjoining bedroom and an officer "testified as to the role of firearms in protecting drug dealers, their drugs, and their business." *Id.* at 947. Here, the evidence exceeded that in *Sanchez-Garcia* because the firearm was loaded and lying on Marble's desk, there were baggies lying on the same desk, and the desk was in the same room as a dryer containing drugs. Furthermore, the government introduced still images of a gun from one of the controlled-buy videos. And Cupp testified about drug dealers' use of guns. Under *Sanchez-Garcia*, this evidence is sufficient to support Marble's conviction for possession of a firearm in furtherance of drug trafficking.

### III. *Conclusion*

Sufficient evidence supports Marble's convictions on all five counts. Therefore, we affirm.

_____