# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1324

_____

United States of America,                  *
                                            *
          Appellee,                         *
                                            *
     v.                                     *
                                            *
Ruth Lee,                                   *
                                            *
          Appellant.                        *


_____                    Appeals from the United States
                               District Court for the Northern
No. 03-1376                    District of Iowa.
_____

United States of America,                  *
                                           *
          Appellee,                        *
                                           *
     v.                                    *
                                           *
Michael Sandmeyer,                         *
                                           *
          Appellant.                       *

_____

Submitted:  October 20, 2003

Filed:  December 31, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and MURPHY, Circuit
   Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Ruth Lee and Michael Sandmeyer were convicted by a jury of possessing with intent to distribute 500 grams or more of a substance containing methamphetamine. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). In addition, Mr. Sandmeyer was convicted of being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). Mr. Sandmeyer maintains that the district court[1] erred in denying his motion to suppress, in denying his motion for judgment as a matter of law, and in instructing the jury. Ms. Lee challenges only the sufficiency of the evidence to support her conviction. For the reasons stated below, we affirm the district court on all points.

I.

This case began with an investigation into the suspected drug-dealing activities of Kenny Siepker, who allegedly took property ranging from Coca-Cola memorabilia to snowmobiles in exchange for methamphetamine. When police arrived at the farm where the defendants lived, they had a warrant to search for property of Mr. Siepker secreted there. The police asked for permission to search for the property without telling the defendants that they had a warrant, and after consultation Mr. Sandmeyer and Ms. Lee gave the requested permission. During the course of the search, which included outbuildings, a boat, and the farmhouse, the police repeatedly sought and obtained consent to extend the search. On the basis of drugs discovered in plain view in the farmhouse, the police obtained a second warrant to search for evidence of drug dealing by Mr. Sandmeyer. Even though this warrant was issued while the first search was ongoing, the police never informed the defendants of its existence because

---

[1]The Honorable James M. Rosenbaum, United States District Judge for the Northern District of Iowa.

-2-

they consented to further searches. Mr. Sandmeyer now argues that his consent was not voluntarily given.

Unlike the waiver of constitutional rights associated with a fair trial, consent to a police search need only be voluntary, and the party giving consent need not be fully aware of his or her constitutional rights. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 241, 248-49 (1973). The issue of whether consent was voluntary is a question of fact, *id.* at 248-49, which requires an intensive inquiry, and our precedents direct courts conducting that inquiry to look at a number of different considerations, none of which standing alone is dispositive. *See United States v. Chaidez*, 906 F.3d 377, 380-81 (8th Cir. 1990). The government has the burden of showing that consent was voluntary, but on appeal we review the district court's factual findings under a clearly erroneous standard. *Id.* at 380.

Mr. Sandmeyer's first theory is that because he was not told of the officers' warrant, his consent was involuntary. There is no merit to this argument. Even if hypothetically a defendant's knowledge of his or her ability to refuse could be relevant to whether his or her consent was voluntary, it would be relevant only in those cases in which the defendant erroneously believed that he or she had no legal right to stop the police from searching. In this case, however, the facts that Mr. Sandmeyer was ignorant of were not ones that would have made him believe that he could prevent the search from proceeding. Therefore, it makes no sense for Mr. Sandmeyer now to argue that his ignorance affected the voluntariness of his consent. The Supreme Court in *Schneckloth*, 412 U.S. at 242-43, held that the police need not obtain a warrant in those cases where they have probable cause to get one, so long as they obtain the voluntary consent of the person searched. Analogously, we reject the contention that the police must execute a warrant simply because they have it. It is enough that Mr. Sandmeyer voluntarily consented to the search.

Mr. Sandmeyer maintains next that given the totality of the circumstances he did not consent voluntarily. Looking to the record, we cannot say that it was clear error for the district court to find against Mr. Sandmeyer on this point. In assessing a defendant's ability to consent voluntarily, courts have looked to the defendant's age, intelligence, and education, whether or not he or she was intoxicated, whether he or she had been informed of his or her *Miranda* rights, and whether he or she had previous experience with the criminal justice system. *See, e.g., United States v. Alcantar*, 271 F.3d 731, 737 (8th Cir. 2001), *cert. denied*, 535 U.S. 964 (2002).

It is true that the record indicates that Mr. Sandmeyer was never told of his *Miranda* rights. *Miranda* warnings, however, are not required for consent to a search to be voluntary, although they can lessen the probability that a defendant was subtly coerced. *See United States v. Payne*, 119 F.3d 637, 644 (8th Cir. 1997), *cert. denied*, 522 U.S. 987 (1997). In this case, moreover, the other relevant considerations work against Mr. Sandmeyer's claim. He is in his forties, graduated from high school, and has some college education. Evidence introduced by the government shows that in 1996, he was convicted of the manufacture and delivery of methamphetamine and was previously arrested for possession of drugs with intent to deliver. There is no contention that he was intoxicated at the time of the search. In short, the record supports the finding that Mr. Sandmeyer is a fully functioning adult who has a greater than average familiarity with the criminal justice system. Nor does the record reveal any activity on the part of the searching officers that would assist Mr. Sandmeyer's claim. There is some dispute as to the precise number of officers involved during each phase of the search, but there is no evidence that the officers improperly invoked their authority or physically intimidated the defendants. Rather, undisputed testimony suggests that they were punctiliously courteous and allowed Mr. Sandmeyer and Ms. Lee to consult at length and in private about whether to permit the searches.

Mr. Sandmeyer asserts that even if the search was consensual the police exceeded the scope of the permission that he gave them. We reject this argument.

The police officers either asked if they could "look at" or "look in" Mr. Sandmeyer's boat for Mr. Siepker's property. At the time that the request was made, the boat itself was in plain sight. Mr. Sandmeyer assented, and the police found a PVC pipe containing methamphetamine stashed in one of the internal compartments of the boat. Mr. Sandmeyer argues that his assent to "looking at" the boat did not extend to an internal search of the boat's compartments, but referred only to outer, visual inspection. At the time that the request was made, however, the officer was already "looking at" the boat in the sense that Mr. Sandmeyer wants us to understand the phrase. The police obviously had no need to ask him if they could do that. Furthermore, at no time did Mr. Sandmeyer object to the officer's search. Given these facts, it was not clear error for the district court to conclude that Mr. Sandmeyer consented to a full search of the boat. There is nothing unreasonable about this interpretation of the exchange, and it is supported by the circumstances.

When the officers asked Mr. Sandmeyer for his consent, they repeatedly stated that if he had nothing to hide, then he should not object to the search. Mr. Sandmeyer argues that this constituted an implied assertion of authority, thus rendering his consent involuntary. In support of this contention he cites *United States v. Pena-Saiz*, 161 F.3d 1175, 1177-78 (8th Cir. 1995), where we held that consent to a search given by a party who believed that she was under arrest and unable to refuse was involuntary. The facts of *Pena-Saiz*, however, are quite different from those presented here. In that case, the defendant was stopped in an airport, taken to an interrogation room, and informed by the police that they would search her packages because "[t]his is what we do. We talk to people, we search people's bags, we pat search people. This is what we do everyday." *Id.* at 1176-78. In contrast, the officers never detained Mr. Sandmeyer and certainly never subjected him to the close and intimidating confinement that the defendant experienced in *Pena-Saiz*. Nor did they tell Mr. Sandmeyer that the search they were conducting was a routine activity for which they had proper authority.

We conclude, moreover, that even if Mr. Sandmeyer's consent to the search was involuntary, the police would inevitably have discovered the incriminating evidence against him anyway. *See Nix v. Williams*, 467 U.S. 431, 444 (1984). In applying *Nix v. Williams*, we have held that there must have been a reasonable probability that the evidence would have been discovered by lawful means and that the government was actively pursuing a parallel investigation at the time of the constitutional violation before the evidence will be admissible. *United States v. Connor*, 127 F.3d 663, 667 (8th Cir. 1997).

When the police arrived at the farm, they already had a warrant to search for the property of Mr. Siepker, a suspected drug dealer. Thus, they were "actually pursuing a substantial, alternative line of investigation at the time of the [alleged] constitutional violation." *See id.* Mr. Sandmeyer argues that the warrant did not extend to the search of such confined spaces as the internal compartments of his boat. Mr. Siepker, however, is a collector of Precious Moments statues and Hallmark ornaments, and the warrant specifically allowed the police to search for those "collectibles" anywhere on the farm. The internal boat compartments and the PVC pipe in which the police found the first stash of incriminating methamphetamine are both plausible hiding places for an ornament or figurine. The other incriminating evidence would similarly have been found in the course of a valid search using the Siepker warrant, or as a result of warrants that the police could have obtained on the basis of evidence discovered under that warrant.

## II.

Both Ms. Lee and Mr. Sandmeyer challenge the sufficiency of the evidence supporting their convictions. We will overturn the verdict of a jury only in rare cases. In order to prevail, the defendants must show that no reasonable jury could have found that they were guilty beyond a reasonable doubt. *United States v. Surratt*, 172 F.3d 559, 563 (8th Cir. 1999), *cert. denied*, 528 U.S. 910 (1999) & 537 U.S. 850 (2002). All the evidence must be viewed in the light most favorable to the jury's

verdict, and on appeal the government is entitled to have any evidentiary conflicts resolved in its favor. *Id.*

Viewed in such a light, the evidence shows that during the course of their search of the farm, the police discovered methamphetamine in Mr. Sandmeyer's boat, in a shoe next to his safe, in a boot shown to them by Ms. Lee, and in the pockets of a coat. Except for the drugs found in Mr. Sandmeyer's boat, all of the methamphetamine was found in the defendants' residence. Some of it was divided into small "retail-size" packets. Some of it was in large "wholesale-size" packets. In all, the government introduced into evidence approximately three pounds of methamphetamine, a product that is typically consumed in grams and ounces. In addition, the government discovered and submitted into evidence sensitive scales of the kind often used to divide drugs into small "retail" packets, an unopened electronic surveillance system and safe of the kind often used by drug dealers, a gun, over $60,000 in cash, and receipts for several thousand dollars of wire transfers to various people in Stockton, California. All of this evidence was found on the defendants' property. The government produced witnesses who testified that Stockton is a known source of methamphetamine for the Iowa market. Finally, a witness, Peggy Hoover, testified to purchasing drugs from Mr. Sandmeyer in the past.

The crime with which Mr. Sandmeyer and Ms. Lee were charged has four elements: possession of a mixture containing the controlled substance, knowledge that the substance is an illegal drug, intent to distribute the mixture to others, and possession of at least 500 grams of the mixture. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii); *cf. United States v. Milk*, 281 F.3d 762, 765-66 (8th Cir. 2002); *United States v. Sheppard*, 219 F.3d 766, 767 (8th Cir. 2000), *cert. denied*, 531 U.S. 1200 (2001).

We have little difficulty upholding the jury's verdict with regard to knowledge and quantity. The issue of possession requires more attention. In order to possess

something, it is not necessary that a person have actual, physical possession of it: One can also have constructive possession. It appears to us that our relevant cases have repeatedly stated that constructive possession consists of knowledge of the drugs and the ability to exercise control over them, *see, e.g., United States v. Lemon*, 239 F.3d 968, 970 (8th Cir. 2001), but we believe that this formulation is incomplete. As our discussion of the concept of constructive possession elsewhere demonstrates, one must also have the intent to exercise control over the object constructively possessed. *See United States v. Gary*, 341 F.3d 829, 834 (8th Cir. 2003) (discussing a felon in constructive possession of a firearm). The district court's instructions to the jury in this case properly included this element. Perhaps our drug cases have implicitly acknowledged this additional element by repeatedly insisting that "[m]ere physical proximity to contraband is insufficient to convict a person of possession with intent to distribute." *See, e.g., United States v. Yirkovsky*, 338 F.3d 936, 939 (8th Cir.2003) (internal quotations omitted). Furthermore, given that intent is an independent element of the crime of possession with intent to distribute, it is understandable that some of our prior decisions have not found it necessary to point out that intent to exercise control is also an element of constructive possession. As this case illustrates, the same evidence can be used to show both sorts of intent. Nevertheless, it is important to understand that constructive possession requires knowledge of an object, the ability to control it, and the intent to do so.

In this case the ability of the defendants to exercise control over the drugs is amply illustrated by the fact that they were able to lead the searching officers to the drugs. Likewise, their knowledge that they possessed drugs is demonstrated by the fact that they produced the substance after being asked specifically if they had any more methamphetamine. Whether or not they had the intent to exercise dominion over the drugs is somewhat more difficult, but we conclude that there was sufficient evidence to sustain this finding as well. As in so many of our other cases, the evidence in the present case that establishes the intent of the defendants to distribute the drugs also permits the inference that they intended to exercise dominion over

them, thus giving Mr. Sandmeyer and Ms. Lee the intent necessary to constitute constructive possession as well.

A jury could have reasonably inferred an intent to distribute drugs from the evidence. Ms. Hoover testified that Mr. Sandmeyer had sold drugs in the past, although she specifically stated that while she had used drugs with Ms. Lee, Ms. Lee had never sold her any. The receipts linking the defendants with Stockton, a known point of origin for methamphetamine, along with the large quantities of cash and the presence of equipment (the scale, safe, gun, and surveillance cameras) associated with the drug trade further support the verdict. The evidence is admittedly more convincing against Mr. Sandmeyer than against Ms. Lee. But one of the receipts for the wire transfers to Stockton bore Ms. Lee's name, and the contact information for the recipient appeared in an address book found in Ms. Lee's purse. Given this evidence, we cannot say that no reasonable jury could possibly have convicted the defendants. Ms. Hoover's testimony, the drug-related equipment, and the wire transfers suggest that the defendants intended to distribute drugs. A reasonably jury could also have concluded that this intent to distribute included an intent to exercise dominion over the drugs, thus providing the third element for constructive posession.

Ms. Lee maintains that she has been convicted merely because of her proximity to her boyfriend's drug dealing and asserts that her case is controlled by our decision in *United States v. Hernandez,* 301 F.3d 886 (8th Cir. 2002), a case in which we upheld a district judge's decision to set aside a verdict for insufficient evidence. In that case the defendant was arrested as part of a sting against her live-in boyfriend, who was convicted of drug dealing. There was no evidence in *Hernandez* to suggest that the defendant was even aware of the drugs and drug paraphernalia found hidden in her home, nor was there any other evidence linking her with drug use or drug dealing. *See id.* at 890-91. In other cases where we have found insufficient evidence to convict a person cohabiting with a convicted defendant, there has been no evidence

that the acquitted party was even aware of, let alone involved in, the drug-related activity. *See, e.g., United States v. Ward*, 703 F.2d 1058, 1062 (8th Cir. 1983).

We think that Ms. Lee's case is much closer to *United States v. LaGuardia*, 774 F.2d 317 (8th Cir. 1985). In that case, we upheld the conviction of a couple who had "substantial quantit[ies]" of drugs in their residence (including drugs in a kitchen drawer), drug paraphernalia in the common areas of the bedroom and kitchen, and a weapon in the purse of one of the cohabitants. Ms. Lee was clearly aware of the large quantity of drugs in her home, and there was evidence other than simply the drugs (in this case the wire receipt and the address book) suggesting her involvement in drug distribution.

Mr. Sandmeyer also challenges the evidence supporting his conviction on the weapons charge. He contends that he did not have possession of a handgun buried under some clothing in a cedar chest. Mr. Sandmeyer argues that he did not know of the presence of the gun and that the government failed to produce evidence showing that he even used the room where it was found. The chest, however, was located in the bedroom where Mr. Sandmeyer kept his safe; it is the master bedroom of the house, and Mr. Sandmeyer and Ms. Lee were the home's only inhabitants. After their arrest, Mr. Sandmeyer and Ms. Lee were married, and the record shows that they lived together at the time of their arrest. Given this evidence, a reasonable jury could have concluded that Mr. Sandmeyer occupied the room in question and that he was aware of the contents of the chest.

### III.

Finally, Mr. Sandmeyer challenges the district court's refusal to give the jury an instruction on the meaning of the word "knowingly" in the instructions relevant to his weapons charge. Mr. Sandmeyer's argument is without merit. A defendant is not entitled to instructions on the definition of every word in an instruction. *Cf. United States v. Wright*, 246 F.3d 1123, 1128 (8th Cir. 2001), *cert. denied*, 534 U.S.

919 (2001). As the district judge correctly pointed out, "the word 'knowingly' is not beyond the ken of a jury or common layperson." *See United States v. Johnson*, 892 F.2d 707, 710 (8th Cir. 1989). Nothing prevented Mr. Sandmeyer from arguing to the jury that the government had not proved that he knowingly possessed the gun, and during closing argument his attorney in fact made that very point.

## IV.

For the reasons set forth above, we affirm the convictions of both Ms. Lee and Mr. Sandmeyer.

_____