# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-4046

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Jose Martinez Escobar; Vicky Lynn | * | District of Nebraska. |
| Loos, also known as Vicky L. | * | |
| Reppuhn, | * | |
| | * | |
| Defendants/Appellees. | * | |

_____

Submitted: August 26, 2004
Filed: November 18, 2004

_____

Before BYE, LAY, and RILEY, Circuit Judges.

_____

BYE, Circuit Judge.

The United States appeals the district court's[1] order granting Vicky Lynn Loos's and Jose Martinez Escobar's motions to suppress evidence discovered in a warrantless search of their luggage. We affirm.

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

# I

On February 24, 2003, Loos and Escobar were traveling from Los Angeles, California, to a final destination of Saginaw, Michigan, aboard a passenger bus. At midday, the bus arrived at the bus terminal in Omaha, Nebraska, to refuel. During refueling, the passengers were allowed to disembark and remain at ease in the terminal.

During this Omaha refueling stop, members of the Omaha Metropolitan Commercial Interdiction Unit were stationed at the terminal so as to target drug-trafficking operations. During the refueling, two members of the unit, James Krans and Alan Eberle, visually inspected luggage stored in the bus's cargo hold. Krans noticed two new green bags, similar in design, which were secured with "larger than normal padlocks." The bags aroused the investigators' suspicions and upon further scrutiny they determined the bags belonged to Loos and Escobar.

Krans and Eberle did not attempt to establish probable cause by subjecting the bags to a drug-dog sniff. Instead, they continued their investigation by attempting to determine if Loos and Escobar had purchased their tickets on the day of travel using cash. The bus company's computer system, however, was not working so they asked a bus company employee to page the pair. Moments after the page, Loos approached the employee counter and Krans identified himself as a police officer. Krans told Loos she was not under arrest and had done nothing wrong but he needed to talk to her. Loos agreed to talk but became noticeably nervous. When Krans asked for identification, Loos returned to the table where she had been sitting with Escobar and retrieved her driver's license from her purse. Krans and Eberle followed her to the table and continued the conversation. Among other things, Krans lied by telling Loos a drug-detection dog had in fact alerted on Loos's and Escobar's luggage and he asked her if she had the keys to the padlocks. Loos did not respond but began rummaging through her purse in an apparent attempt to locate the keys. Eberle took

no active role in the conversation with Loos, but instead introduced himself to Escobar and asked to see his ticket. From the ticket, Eberle was able to determine it had been purchased utilizing cash on the day travel commenced.

Eberle and Krans continued questioning Escobar and Loos until Krans asked Loos to accompany him to the baggage area to identify her bag. Krans then turned and walked away, leaving Loos little choice but to follow him. Eberle, in turn, asked Escobar to accompany him to the baggage area. Like Loos, Escobar said nothing but complied with Eberle's request.

The baggage area is a large room in a non-public part of the terminal. Once inside, Krans asked Loos if he could search her purse for the keys. Loos laid her purse on the table and told Krans to: "Go ahead." As he searched the purse, another investigator appeared carrying the bags. Krans found the keys and asked if he could search her bag. Again, Loos responded with: "Go ahead." At no time was Loos advised she was free to object to the search. As Krans searched Loos's bag, Eberle asked Escobar for permission to search his bag. Escobar said: "Go ahead, you're going to do it anyway." Eberle informed Escobar he did not have to consent to the search, but as noted by the district court, the admonition "was ineffectual since Loos had already consented and both defendants were immediately put into custody before there was an attempt to search Escobar's bag." Appellant's Ad. p. 39.

The search uncovered in excess of five kilograms of cocaine. Escobar and Loos were arrested and charged with conspiracy to possess and distribute five kilograms or more of cocaine, 21 U.S.C. § 846, and possession with intent to distribute five kilograms or more of cocaine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1). Loos and Escobar filed motions to suppress the drug evidence arguing the officers did not have a reasonable articulable suspicion to justify removing the bags from the bus or to detain the bags for further inspection. The government argued the officers had a reasonable articulable suspicion the bags contained illegal drugs, and even

assuming they did not, Loos and Escobar consented to the removal of the bags from the bus. The government further argued Loos and Escobar consented to the search of their luggage thereby vitiating any problems with the detention.

The magistrate judge's Report and Recommendation recommended denying the suppression motions. The district court, however, rejected the recommendation and granted the motions finding the officers lacked a reasonable articulable suspicion to justify detaining the bags, and the consent given by Loos and Escobar to detain the bags was not freely and voluntarily given. Finally, the district court determined Krans lied about having probable cause to search the bags, and Loos's and Escobar's consent to search was too close in time to the misconduct to purge the taint of the illegal detention. In other words, consent was not freely and voluntarily given.

II

The district court's analysis addressed three distinct issues arising out of the search of Loos's and Escobar's luggage. First, the court analyzed whether removing the bags from the bus and carrying them to the baggage area was a seizure supported by a reasonable articulable suspicion. Second, the district court addressed whether Loos and Escobar consented to having the bags removed and brought to the baggage area. Finally, the district court considered whether Loos's and Escobar's consent to search the bags, which followed closely on the heels of the illegal detention, was valid. We find it unnecessary to explore the first two issues and focus our analysis on the third.[2]

---

[2]We express no opinion about whether the removal of the bags from the bus and carrying them to the baggage area was supported by a reasonable articulable suspicion.

We require a showing of reasonable articulable suspicion before law enforcement is permitted to detain or seize an item for purposes of investigation, i.e., to establish probable cause. United States v. Logan, 362 F.3d 530, 533 (8th Cir. 2004). If officers do not have a reasonable articulable suspicion sufficient to justify detaining an item, any subsequent search of the item will be held unconstitutional even though probable cause was later established. Here, however, the government never established probable cause. Thus, even assuming the initial seizure was proper, the search was permissible only if Loos and Escobar freely and voluntarily consented. See United States v. Cedano-Medina, 366 F.3d 682, 684 (8th Cir. 2004) (citing Katz v. United States, 389 U.S. 347, 356-57 (1967)) (holding searches conducted without a warrant based on probable cause are presumptively unreasonable).

"Under the fourth and fourteenth amendments, searches conducted without a warrant issued upon probable cause are presumptively unreasonable, subject to a few specifically established exceptions." Id. Consent to search is one such exception, and "[a] warrantless search is valid if conducted pursuant to the knowing and voluntary consent of the person subject to a search." United States v. Brown, 763 F.2d 984, 987 (8th Cir. 1985). Whether consent is voluntarily given is a question of fact, Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973), and on appeal, we review the district court's fact findings for clear error. United States v. Lee, 356 F.3d 831, 834 (8th Cir. 2003).

The test applied to determine if consent is free and voluntary is whether, in light of the totality of the circumstances, consent was given without coercion, express or implied. Bustamonte, 412 U.S. at 227; Laing v. United States, 891 F.2d 683, 686 (8th Cir. 1989). The government bears the burden of showing consent was freely and voluntary given and not a result of duress or coercion, Laing, 891 F.2d at 686, and the burden cannot be discharged by showing mere acquiescence to a claim of lawful authority. Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968). "Rather, the government must show that a reasonable person would have believed that the subject

of a search gave consent that was the product of an essentially free and unconstrained choice, and that the subject comprehended the choice that he or she was making." Cedano-Medina, 366 F.3d at 684 (internal citations and quotations omitted).

Factors we consider when determining if consent was freely and voluntarily given, as set forth in United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990), include 1) age, 2) general intelligence and education, 3) whether the individual was under the influence of drugs or alcohol, 4) whether she was informed of the Miranda[3] rights, and 5) whether she had experienced prior arrests and was thus aware of the protections the legal system affords suspected criminals.

Additionally, the environment in which the alleged consent was secured is also relevant. Accordingly, we consider 1) the length of time one was detained, 2) whether the police threatened, physically intimidated, or punished the suspect, 3) whether the police made promises or misrepresentations, 4) whether the suspect was in custody or under arrest when the consent was given, 5) whether the consent occurred in a public or a secluded place, and 6) whether the suspect stood by silently as the search occurred. United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001). We also consider "whether the defendant's contemporaneous reaction to the search was consistent with consent." United States v. Jones, 254 F.3d 692, 696 (8th Cir. 2001). "The factors should not be applied mechanically, and no single factor is dispositive or controlling." United States v. Bradley, 234 F.3d 363, 366 (8th Cir. 2000) (internal citation omitted).

Here, Krans and Eberle summoned Loos to the employee counter to confront her with their suspicions. There is no evidence Krans threatened, physically intimidated or punished Loos or Escobar. Indeed, Krans told Loos she was not in

---

[3]Miranda v. Arizona, 384 U.S. 436, 473 (1966).

trouble or under arrest. Nevertheless, after Loos produced her identification, Krans told her a drug-sniffing dog had given a positive indication of drugs in her travel bag.[4] Next, Krans asked for the keys to unlock the padlocks and when Loos was unable to locate them, he suggested he should search her purse. Eventually, Krans asked Loos to accompany him to the baggage area – a non-public part of the terminal – and without waiting for a response, he turned and walked away leaving Loos no choice but to follow. Once in the baggage area, Krans renewed his request to search Loos's purse. Loos told him to "[g]o ahead," and after Krans located the keys and asked to search the bags, Loos again responded with "[g]o ahead." At no time was Loos advised of her right to leave or refuse consent.

Simply telling a police officer to "[g]o ahead" with a search is not, in and of itself, proof of voluntary consent. See United States v. Morgan, 270 F.3d 625, 631-32 (8th Cir. 2001). Further, while Miranda warnings "are not required for consent to a search to be voluntary . . . they can lessen the probability that a defendant was subtly coerced." Lee, 356 F.3d at 834 (citing United States v. Payne, 119 F.3d 637, 644 (8th Cir. 1997)); see also Buffkins v. City of Omaha, 922 F.2d 465, 469 (8th Cir. 1990) ("Although a seizure does not automatically occur if an officer does not inform a detainee that he or she is free to leave, the absence of such notice may imply that the detainee is being restrained.") (citation omitted). Here, it is undisputed Krans and Eberle did not provide Miranda warnings or advise Loos and Escobar they were free to leave.

We recognize the Supreme Court has held when officers have no basis for suspecting a particular individual, they may generally ask questions of the individual, see INS v. Delgado, 466 U.S. 210, 216 (1984), ask to examine the individual's

---

[4]We agree with the district court's conclusion that although Krans was speaking specifically to Loos, Escobar was seated in close proximity and could clearly hear the statement.

identification, id.; United States v. Mendenhall, 446 U.S. 544, 557-58 (1980), and request consent to search his or her luggage, see Florida v. Royer, 460 U.S. 491, 501 (1983) (plurality opinion). Police may not, however, convey a message that compliance with their requests is required. Florida v. Bostick, 501 U.S. 429, 435 (1991). Accordingly, the Supreme Court has held "[w]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion – albeit colorably lawful coercion. Where there is coercion there cannot be consent." Bumper, 391 U.S. at 550; see also United States v. Briley, 726 F.2d 1301, 1304 (8th Cir. 1984) ("The misrepresentation may even invalidate the consent if the consent was given in reliance on the officer's deceit.") (citations omitted).

When Krans represented a drug-sniffing dog had alerted on the travel bags, he communicated to Loos and Escobar there was probable cause to search and they had no choice but to permit it.[5] This fact, combined with the location of the search and the officers' failure to advise Loos she had a right to refuse consent, convinces us the district court was not clearly erroneous in determining her consent was tainted. Loos's consent, preceded closely by Krans's false claim of legal authority, merely demonstrates she acquiesced to the search believing she had no choice. Further, we agree with the district court that Escobar's consent to search his bag was similarly tainted by Krans's misrepresentation about the drug dog's positive alert. Escobar was seated in close proximity when Krans claimed a drug dog had confirmed the presence of drugs in Loos's and Escobar's bags. Escobar's mere acquiescence to the search is demonstrated by his equivocal grant of consent: "Go ahead, you're going to do it anyway. Just go ahead and search." Finally, inasmuch as Escobar was arrested

---

[5]Our cases make clear a positive alert by a drug dog constitutes probable cause. See Brown, 345 F.3d at 580; United States v. Gomez, 312 F.3d 920, 925-26 (8th Cir. 2002).

before his bag was searched, we find Eberle's admonition that he did not have to consent was ineffectual.

Accordingly, the judgment of the district court is affirmed.

RILEY, Circuit Judge, concurring.

From its inception, this case has presented a moving target. Because I agree with the court's ultimate resolution of this case on appeal, I concur. However, I wish to discuss the case's unique history, including what issues are properly before us, and our circuit's recent, controlling precedent on the seizure issue to clarify why I concur only in the result.

Loos and Escobar both filed motions to suppress in the district court. The magistrate judge[6] held a suppression hearing. After making credibility determinations, the magistrate judge found: (1) the initial contact between law enforcement officers and Loos and Escobar in the bus terminal was a voluntary encounter; (2) Loos and Escobar voluntarily followed the officers to the baggage area inside the terminal; (3) Loos voluntarily consented to searches of her purse and luggage; and (4) Escobar voluntarily consented to the search of his luggage. The magistrate judge recommended the motions to suppress be denied.

Loos and Escobar then filed objections to the magistrate judge's report and recommendation, attacking the magistrate judge's "finding that 1) their encounter with the officers was consensual until the officers found the cocaine in the bag, and 2) they voluntarily consented to a search of their belongings." After a careful de novo review of the record, the district court concluded the magistrate judge "correctly

---

[6]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

-9-

found that the encounter between the officers and the defendants was voluntary and did not become an investigatory detention or seizure until the officers discovered the drugs in Loos's bag." The district court also agreed with the magistrate judge's finding "that Loos voluntarily consented to the search of her purse and bag and that Escobar voluntarily consented to the search of his bag."

Notwithstanding its findings that Loos and Escobar voluntarily consented to the searches of their luggage, the district court noted Escobar filed an out-of-time objection, arguing, for the first time, "the officers seized his bag from the luggage compartment of the bus without a warrant and took it to a nonpublic area of the bus terminal in violation of his Fourth Amendment rights." The district court posited the late-filed objection was in response to the district court's recent decision in an almost identical case entitled United States v. Va Lerie, No. 8:03CR23, 2003 WL 21956437 (D. Neb. Aug. 14, 2003). Because the parties had not briefed or argued the seizure issue before the magistrate judge, the district court ordered briefing and an evidentiary hearing. The court specifically asked the parties to brief the following issues:

    a.    Whether the officers' warrantless removal of the defendants' bags from the luggage compartment of the bus to the bus terminal's baggage room was an unconstitutional seizure, and

    b.    If so, whether the voluntariness of the defendants' consents to search, as determined by the factors in Brown v. Illinois, 422 U.S. 590 (1975), retains the taint of the illegal seizure.

The district court made clear its conclusions "on the voluntariness of the defendants' consent are consequently only provisional. If new evidence establishes that the seizure of the bag was unconstitutional, evidence about the drugs could be suppressed as fruit of the poisonous tree unless the defendants' alleged consent to the searches of the purse and the bags removed the taint of the unlawful seizure."

After the parties briefed the newly raised issues and after an evidentiary hearing, the district court stated, "Upon reviewing the entire record, the party's supplemental briefs, and the evidence adduced at both hearings, the court finds the seizure of luggage violated the defendants' Fourth Amendment rights and all subsequent evidence resulting from the seizure should be suppressed." Relying in part on its seizure decision in Va Lerie, the district court concluded the officers seized the luggage when they "removed the [luggage] from the bus, separated it from the rest of the luggage, and carried it into the baggage area," because "[t]his degree of dominion and control constitutes a meaningful interference" with Loos's and Escobar's property. The district court then decided the officers did not have reasonable suspicion to seize the luggage.

Finally, the district court again addressed the consent to search issue, initially focusing on whether Loos and Escobar consented to the seizure of the luggage. For the first time, the district court recognized the officer's lie about the drug dog alerting to the luggage "is the same as stating there is probable cause that the luggage contains contraband and is subject to seizure." The district court stated the "lie relayed a message that Loos and Escobar's consent was not required for the investigators to seize their luggage," and any consent was merely "an acquiescence to the investigators' claim they had the legal right to retrieve and detain [the defendants'] luggage." Thus, the district court found "[t]he coercive nature in which the investigators obtained access to and then searched the luggage precludes a finding of voluntary consent."

The district court then noted, "After the illegal seizure of the luggage, Loos and Escobar consented to the search of their luggage. In the [court's] previous order, the court found that both defendants' consent was voluntary." Based on its newfound seizure holding, the district court stated "admissibility is dependent on whether the defendants' voluntary consent was sufficient to purge the taint of the illegal seizure under the principles of Brown v. Illinois, 422 U.S. 590 (1975)," requiring a showing

-11-

that "Loos and Escobar's consent was an intervening independent act of free will sufficient to purge the primary taint of the unlawful invasion." The district court concluded by "finding Loos and Escobar's consent to search their luggage was obtained by exploitation of the illegal seizure." Thus, the district court granted Loos's and Escobar's motions to suppress the cocaine seized from their luggage.

The district court's evolving view of the evidence and the relevant issues allowed the court to grant the motions to suppress. If the district court had not held the removal of the checked luggage from the bus was an unconstitutional seizure, the court would not have changed its consent findings. That is, the court did not experience a dramatic, epiphanic reversal of its consent to search conclusion. The court in its initial analysis and opinion on consent was aware of the dog-alert lie. Only when the district court viewed the consent issue through the lens of a prior unlawful seizure did the court conclude Loos's and Escobar's consents to search were constitutionally deficient. Thus, the district court never found Loos and Escobar failed to consent to the searches of their luggage. Instead, the district court specifically found Loos and Escobar voluntarily consented to the search of their luggage, but later found such "consent was not an [intervening] independent act of free will" necessary to purge the taint of the unlawful seizure. The district court's consent findings were tied directly and exclusively to its seizure holding.

On appeal, the government contends the district court erred in two ways: (1) "in Finding the Defendants' Bags had been Seized for Unconstitutional Purposes"; and (2) "in Finding the Defendants' Consents Did Not Purge the Taint of the Prior, Illegal Seizure."[7] For some reason, this panel refuses to address the seizure issue, but instead simply decides the consents to search were tainted. The panel should not avoid altogether the seizure issue and imply the district court's consent findings were unrelated to its seizure holding. Instead, the panel should address the issues

---

[7]Escobar's enunciation of the issues, in which Loos joined, is strikingly similar.

presented by the district court's decisions and argued by the parties on appeal. In so doing, the panel would reach the same result.

Our court recently decided a seizure case involving the same bus terminal in Omaha, some of the same drug interdiction officers, almost identical facts, and even the same district judge. See United States v. Va Lerie, 385 F.3d 1141 (8th Cir. 2004). In Va Lerie, a divided panel of our court held, over my dissent, the removal of checked luggage from the lower luggage compartment of a bus to the same room inside the same Omaha terminal was an unlawful seizure under the Fourth Amendment. Id. at 1148. Because Va Lerie controls the seizure issue, I see no reason for the court in this case to ignore month-old precedent and avoid the seizure issue altogether. Because the seizure issue has been presented squarely to our court in this case, the only authorized holding, in light of Va Lerie, is the officers unreasonably and unconstitutionally seized Loos's and Escobar's luggage when the officers removed the checked luggage from the bus's lower luggage compartment to a room inside the terminal.[8]

---

[8]The exact seizure issue presented in Va Lerie is presented to this panel. I dissented in Va Lerie, because I did not believe our court's precedents–or Fourth Amendment seizure principles–required a holding that the checked luggage had been seized. Id. at 1151 (Riley, J., dissenting) (suggesting seizure law required a holding that "law enforcement's temporary removal of a commercial bus passenger's checked luggage from a lower luggage compartment to a room inside the terminal does not constitute a seizure if the removal of the luggage does not delay the passenger's travel, affect the timely delivery of the checked luggage, or interfere with the carrier's normal processing of the checked luggage"). If Va Lerie did not control the seizure issue in this case, I would reverse the district court's holding that Loos's and Escobar's checked luggage was seized when it was removed from the lower luggage compartment to a room inside the bus terminal. See id. at 1151-57. However, I cannot ignore the holding in Va Lerie and avoid the seizure issue altogether. Nevertheless, I reiterate the concerns expressed in my dissent in Va Lerie.

-13-

Had the panel applied Va Lerie and held the removal of Loos's and Escobar's checked luggage from the bus's lower luggage compartment constituted a seizure, we then could hold the district court did not commit clear error in finding Loos's and Escobar's consents to search did not purge the taint of the unlawful seizure. Such a holding is more faithful to the district court's decision and the parties' arguments on appeal.

Deciding consent cases is a fact-intensive exercise, requiring district courts to "careful[ly] sift[] the unique facts and circumstances of each case" to determine whether an individual voluntarily consented to a search. Schneckloth v. Bustamonte, 412 U.S. 218, 233 (1973). The district court's sifting of the unique facts and circumstances in this case changed from its first order to its second order. When the district court reviewed the evidence through the lens of an unlawful seizure, it was then–and only then–the court found Loos's and Escobar's consents were constitutionally deficient.

The district court properly considered the legal effect of the officer's lie about the drug dog alerting when pondering whether Loos and Escobar voluntarily consented to the searches of their luggage. The Supreme Court has "stated that even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her luggage–as long as the police do not convey a message that compliance with their requests is required." Florida v. Bostick, 501 U.S. 429, 434-35 (1991) (citations omitted). In a nutshell, the rationale behind this general rule is "[t]he Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation." Id. at 439. However, the Supreme Court has further stated, "When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion–albeit colorably

-14-

lawful coercion. Where there is coercion there cannot be consent." Bumper v. North Carolina, 391 U.S. 543, 550 (1968).

Lying about a drug-dog alert could, under some circumstances, including those in this case, convey a message that consent to search is unnecessary. See United States v. Cabrera, 117 F. Supp. 2d 1152, 1158 (D. Kan. 2000) (finding defendant did not voluntarily consent to a search when an officer lied about a drug dog alerting, noting the officer "relied on a blatant deception–the positive dog alert–to further the impression that [the defendant] had no choice but to permit [the] search"); see also United States v. Pena-Saiz, 161 F.3d 1175, 1177-78 (8th Cir. 1998) (holding the district court's no-consent finding was not clearly erroneous, because the individual felt she was under arrest and had to submit to the pat-down search, in part based on the officers saying, "This is what we do. We talk to people, we search people's bags, we pat search people. This is what we do everyday."); United States v. Severe, 29 F.3d 444, 446 (8th Cir. 1994) (holding threat to obtain a search warrant if individual does not consent to a search is just one factor in deciding whether the totality of the circumstances supports a voluntary consent finding). But cf. United States v. Hawthorne, 982 F.2d 1186, 1191 (8th Cir. 1992) (holding district court's finding of consent was not clearly erroneous when the defendant consented after officers told him they could get a drug dog, even though the defendant knew the dog would alert).

Realizing there is "a vast difference between a misrepresentation of legal authority and a misunderstanding of legal authority," the district court was not clearly erroneous in finding Loos's and Escobar's consents to search, in light of the lie about the drug dog alerting, were insufficient to overcome the taint of an unlawful seizure. See United States v. Allison, 619 F.2d 1254, 1262, 1264 (8th Cir. 1980) (holding "a search pursuant to the service of a subpoena duces tecum, as in normal consent search situations," involves "a question of fact to be determined from the totality of all the circumstances," and recognizing "a vast difference between a misrepresentation of legal authority and a misunderstanding of legal authority") (citation omitted).

-15-

Because I would be faithful to the district court's decisions, the issues argued by the parties, and our court's recent precedent, I concur only in the result reached by the court in this case.

_____