# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3523

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| James Dooley, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 14, 2009
Filed: September 1, 2009

_____

Before WOLLMAN, MELLOY, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

James Dooley was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He appeals, arguing that the district court erred in denying his motion to dismiss the indictment under the Interstate Agreement on Detainers Act (IADA) and in submitting an improper jury instruction. He also contends that the evidence was insufficient to support his conviction. We reverse.

## I.

On the evening of February 4, 2007, Missouri State Highway Patrol Officer Michael Greenan was parked in front of a police station in Mountain View, Missouri, when he observed two individuals in a black Chevy Blazer driving across an adjacent parking lot. Because the Blazer did not appear to have any license plates, Greenan activated his traffic lights and followed the vehicle, which pulled into a nearby alley. As Greenan neared the Blazer he recognized the driver as Dooley, whom he had known for many years. The man sitting in the passenger seat was later identified as Michael Hohenstein.

As Greenan walked up to the Blazer, Dooley stepped out to meet him, appearing cooperative and unconcerned about the stop. Greenan then shined his flashlight into the rear window of the Blazer, where he noticed the butt of a .22 caliber rifle behind the driver's seat. At about that time, Officer Larry Burton of the Mountain View Police Department arrived on the scene and began talking to Hohenstein as Greenan and Dooley spoke about the gun. According to Greenan, Dooley stated that he knew the gun was in the vehicle and that it belonged to his wife. Dooley claims that his only remark was "man, you know I didn't know that gun was in the car."

Officer Greenan and Dooley's probation officer, Charlotte Keeling, testified for the government at trial. Greenan recounted the details of the traffic stop, including Dooley's statement that he knew about the gun. Keeling testified that she met with Dooley approximately two weeks after the stop and that he admitted knowing that the gun was in the vehicle. She stated that she later conducted a formal interview about the incident, at which time Dooley refused to comment. On cross examination, Keeling acknowledged that her formal report did not mention Dooley's earlier admission.

Dooley and Hohenstein both testified that they were in the Blazer very briefly while traveling to and from a laundromat near Dooley's house, which the evidence indicated was across a parking lot from the laundromat and directly in front of the alley where the Blazer was stopped. Dooley testified that his wife, who was in the process of purchasing the Blazer, had been driving the vehicle for about a week, and he stated that he had driven it on more than one occasion. He testified that he recognized the .22 caliber rifle and that it was registered in his wife's name. Dooley maintained, however, that he was unaware that the firearm was in the Blazer and denied telling Officer Greenan or Keeling differently. Hohenstein also testified that he was unaware of the firearm and that Dooley had not mentioned it. Finally, Officer Burton testified that he did not hear Dooley admit knowing about the gun.

At the government's request, and over Dooley's objection, the district court gave the jury Instruction No. 17, which modified the definition of constructive possession found in Eighth Circuit Model Criminal Jury Instruction 8.02, which provides, in relevant part, that "[a] person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it." Instruction No. 17 stated that "[a] person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a firearm, or over a vehicle in which the firearm is located, is then in constructive possession of the firearm." Dooley objected to the addition of the phrase "or over a vehicle in which the firearm is located," arguing that it allowed the jury to find him in constructive possession even if he did not know the firearm was in the vehicle. He proposed two additional instructions emphasizing that the jury could not convict him without finding that he knew about the firearm. The district court denied the proposed instructions.

During its deliberations the jury requested to know to whom the firearm was registered and asked to see the police and probation officers' reports. The district

court denied the requests because none of these items had been admitted into evidence. The jury then asked, "[d]oes an individual have to have knowledge of the firearm in the vehicle to be [in] constructive possession?" Dooley renewed his objection to Instruction No. 17 and again asked that his proposed instructions be given. The district court denied Dooley's request, referred the jury to the relevant instructions, and told the jury to use common sense and good judgment in applying all of the instructions.

II.

Dooley argues that the district court erred in denying his motion to dismiss the indictment under the IADA. We review *de novo* the district court's denial of a motion to dismiss an indictment under the IADA, United States v. Neal, 564 F.3d 1351, 1353 (8th Cir. 2009), and we review the factual findings that support that decision for clear error. United States v. McKinney, 395 F.3d 837, 840 (8th Cir. 2005). The IADA allows a prisoner to demand timely adjudication of an untried indictment pending in another jurisdiction, provided that he gives the prosecutor and appropriate court adequate notice of his desire for a speedy disposition of the pending matter. 18 U.S.C. app. 2, § 2, art. III(a). Once the notice requirement has been fulfilled, the prisoner must usually be brought to trial within 180 days, or the indictment must be dismissed. Id. The Supreme Court has strictly interpreted the IADA's notice requirement, holding that "the 180-day time period [in the IADA] does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." Fex v. Michigan, 507 U.S. 43, 52 (1993). Thus, even where a prisoner has made a good-faith effort to invoke his rights under the IADA, he is not entitled to relief unless adequate notice was actually received. See id. at 49-50; see also United States v. Daily, 488 F.3d 796, 801 (8th Cir. 2007) (following Fex and rejecting a prisoner's good-faith, constructive delivery argument).

The district court found that although Dooley mailed a detainer form, he failed to indicate whether he was invoking his rights under the IADA. Specifically, the item on the form stating "I (do) (do not) demand a speedy trial on the charge(s)" was not marked. We cannot say that the district court's finding was clearly erroneous, and thus the district court did not err in denying Dooley's motion to dismiss the indictment.

## III.

Dooley fares better with his second argument, which challenges the adequacy of the jury instructions and the district court's failure to provide supplemental instruction. We review jury instructions for abuse of discretion, considering whether the instructions, taken as a whole, adequately advised the jury of the essential elements of the crime and the government's burden of proof. United States v. Pereyra-Gabino, 563 F.3d 322, 328 (8th Cir. 2009). Although district courts have wide latitude in formulating the wording of instructions, we will reverse if an instructional error has misled the jury or had a probable effect on the verdict. Id.

Instruction No. 17 incorrectly stated that Dooley was in constructive possession of the firearm if he had control over the vehicle in which it was located. We have long held that knowledge is required to establish constructive possession. See, e.g., United States v. Hutchinson, 488 F.2d 484, 488 (8th Cir. 1973) (explaining constructive possession as "knowingly having both the power and intention at a given time to exercise dominion or control" over the contraband); Bass v. United States, 326 F.2d 884, 886 (8th Cir. 1964) (requiring "knowledge of presence plus control"). Many of our recent cases continue to emphasize this point. See, e.g., United States v. Smith, 508 F.3d 861, 866 (8th Cir. 2007); United States v. Piwowar, 492 F.3d 953, 955 (8th Cir. 2007); United States v. Lee, 356 F.3d 831, 837 (8th Cir. 2003); see also Benjamin C. McMurray, Hands Off the Gun! A Critique of *United States v. Jameson* and Constructive Possession Law in the Tenth Circuit, 85 Denv. U. L. Rev. 531, 533

(2008) (collecting cases from eleven circuits, including the Eighth, that require knowledge to establish constructive possession). A defendant's proximity to contraband does not establish constructive possession when he is unaware of its presence. See, e.g., United States v. Pace, 922 F.2d 451, 452 (8th Cir. 1990) ("While [the defendant] was certainly caught driving a car full of drugs, he did not possess them—in the sense of possession that the law recognizes—if he did not know what he had.").

As the government observes, not all of our cases highlight the element of knowledge in constructive possession; a number of them use language similar to that in Instruction No. 17, stating that constructive possession is established if the defendant has control over an area in which a firearm is found. See, e.g., United States v. Maloney, 466 F.3d 663, 666-67 (8th Cir. 2006) ("A person may be in constructive possession of a firearm when he has 'dominion and control' over the firearm itself, or the premises in which the firearm was located."). There are at least two reasons for this particular phrasing. First, the opinions employing this locution are invariably sufficiency-of-the-evidence cases. When the jury has been properly instructed, our analysis focuses on whether a reasonable jury could have found the defendant to be in possession of the firearm. One factor that routinely substantiates the jury's verdict is the defendant's control over the area where the weapon was found—which, in the usual case, gives rise to a strong inference of knowledge. See United States v. Taylor, 113 F.3d 1136, 1145 (10th Cir. 1997) ("In most cases, dominion, control, and knowledge may be inferred where a defendant has exclusive possession of the premises."). But this inference may be rebutted if other evidence contradicts it. Thus, for example, "[i]f you give a lift to a policeman, you do not possess his gun during the time in which he is in your car." United States v. Rawlings, 341 F.3d 657, 660 (7th Cir. 2003).

Second, because knowledge is itself a separate element of the crime of being a felon in possession of a firearm, it would be redundant to analyze knowledge as both

a component of constructive possession and as a separate element of the offense.  Cf. Lee, 356 F.3d at 837 (observing that because intent is a separate element of possession with intent to distribute, some of our cases have not found it necessary to point out that intent to exercise control is also an element of constructive possession).  Some cases, like Maloney, avoid the redundancy by addressing the issue of knowledge wholly apart from constructive possession.  Conversely, other cases have stated that proof of constructive possession establishes knowing possession.  See, e.g., United States v. Patterson, 886 F.2d 217, 219 (8th Cir. 1989).  So long as the element of knowledge is properly established, the semantic difference between these formulations may be insignificant.

For purposes of this appeal, the critical issue is whether the jury realized that it could not convict Dooley unless it found that he was aware of the presence of the firearm.  Instruction No. 17 told the jury to find that Dooley was in constructive possession if he was driving a vehicle in which the gun was found, a fact that was undisputed.  Instruction No. 15 stated that the jury had to find that Dooley "knowingly possessed a firearm," and Instruction No. 16 stated that "[a]n act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident."  We are thus left to determine how the jury applied the element of knowledge to the faulty constructive possession instruction.  One plausible reading of the instructions is that the jury could convict Dooley if he acted knowingly in driving the vehicle.  Or the jury might have found such an interpretation at odds with common sense and then concluded that "knowingly possessed" could refer only to knowledge of the firearm.

In resolving this question we find United States v. Booth, 111 F.3d 1 (1st Cir. 1997), to be instructive.  In that case, the First Circuit considered a modified constructive possession instruction nearly identical to the one here.  The court expressed concern that the instruction would cause confusion but nevertheless upheld the defendant's conviction because he had failed to object to the instruction, several

other instructions provided clarification, and the evidence of guilt was overwhelming.[1] See id. at 2.

In this case, Dooley strenuously objected to the modification on the precise ground that it was contrary to the law and would confuse the jury. As discussed above, the additional instructions did not eliminate the ambiguity because they did not specifically state that Dooley had to know that the firearm was in the vehicle.

There was conflicting evidence on the issue of Dooley's knowledge. Officer Greenan and Probation Officer Keeling testified that Dooley admitted knowing about the gun, but their version of events was contested. Keeling conceded that she did not include Dooley's admission of knowledge in the formal report that she prepared about the incident. Dooley and Hohenstein both testified that they did not know a gun was in the vehicle, and Officer Burton testified that he did not hear Dooley admit to knowing about the firearm. Further, the undisputed evidence showed that Dooley did not own the vehicle and that he and Hohenstein were in the car for only a short time while they drove across a parking lot to the nearby laundromat. The stop took place after dark and the gun was found in the back seat of the car. And Dooley's nonchalance when approached by Officer Greenan could also support the inference that he did not know about the firearm. The jury clearly struggled with this conflicting evidence, as is evidenced by its requests for the police and probation officers' reports and information about the firearm's registration.

Moreover, there is no doubt that the constructive possession instruction confused the jury because it specifically requested additional instruction on whether Dooley had to know the gun was in the vehicle, the correct answer to which would have been "yes." If the question before us were solely whether the evidence was

_____

[1]The defendant was apprehended while driving alone in a stolen car, and the firearm was found in a knapsack on the front passenger seat, along with other items confirmed to be the defendant's. Id. at 1.

-8-

sufficient, we would have little trouble affirming Dooley's conviction. A rational jury could have credited Greenan's and Keeling's testimony that Dooley admitted knowing a firearm was in the vehicle. But where, as here, the evidence is in conflict and the jury was obviously confused by a correctable error in the instructions, we cannot say that the error was harmless.

The judgment is reversed, and the case is remanded to the district court for a new trial.

_____